Glenn W. BRICKER, M.D.

v.

SCEVA SPEARE MEMORIAL HOS-
PITAL et al.

Civ. A. No. 72–10.

United States District Court,
D. New Hampshire.

March 3, 1972.

Glenn W. Bricker, pro se.

Peter V. Millham, Wescott, Millham & Dyer, Laconia, N. H., Frederic K. Upton, Upton, Sanders & Upton, Martin L. Gross, Sulloway, Hollis, Godfrey & Soden, Concord, N. H., E. Donald Dufresne, Devine, Millimet, McDonough, Stahl, & Branch, Philip G. Peters, Wadleigh, Starr, Peters, Dunn & Kohls, Paul E. Nourie, Wiggin, Nourie, Sundeen, Pingree & Bigg, E. Paul Kelly, Sheehan, Phinney, Bass & Green, Manchester, N. H., for defendants.

## MEMORANDUM OPINION

BOWNES, District Judge.

The motions to dismiss require a careful scrutiny of the pro se complaint, keeping in mind that it is to be construed liberally. The plaintiff alleges that he is a duly licensed physician practicing medicine and surgery in Ashland, New Hampshire; that, in addition, he is an authority in legal medicine and practices legal medicine throughout the Northeastern United States; that he testifies as a medical expert in judicial and administrative proceedings, and has participated in the preparation and trial of medical malpractice cases.

He alleges that the defendants, solely because of his participation in medical malpractice cases, have conspired to deprive him of his capacity to earn a living and to practice medicine in violation of the First, Fifth, and Fourteenth Amendments to the Constitution and in violation of the Civil Rights Act of 1871. (No specific section of the Civil Rights Act is specified.)

The plaintiff claims that, in furtherance of this conspiracy, the defendants caused him to be excluded from the medical staff of the Sceva Speare Memorial Hospital, prohibited him from using the facilities at the hospital for the care and treatment of his patients and have caused a proceeding to be filed with the Board of Registration in Medicine for the State of New Hampshire in an effort to have his medical license either suspended or revoked. (No decision has yet been rendered by the Board of Registration in Medicine for the State of New Hampshire.) The complaint also alleges that the defendants have caused material alterations in records, suborned perjury in proceedings before State Courts and quasi judicial boards, instituted a double standard at the hospital relative to regulations imposed, obtained the requirement that all members of the hospital staff carry professional liability insurance, and then threatened to cancel and have cancelled his policy because he testified in a medical malpractice case. The same paragraph alleges that the defendants caused false testimony to be introduced at a trial in which the plaintiff was an expert medical witness in order to contradict, discredit, and impeach his testimony previously given at the trial.

For purposes of this case, the most significant allegation is paragraph 5 in which the plaintiff alleges that he was not notified of the charges against him prior to his exclusion from the medical staff of the defendant hospital. Paragraph 6 alleges that the hospital received monies from the Federal Government under the Medicare program and pursuant to the Hill-Burton Act. (This allegation has not been denied.)

The amended complaint alleges that in furtherance of the conspiracy, the hospital, without notice or hearing, removed

the plaintiff from the roster of physicians participating in the emergency call program after a temporary injunction of the Superior Court of the State of New Hampshire had been in effect for eight months, prohibited its staff from using the plaintiff as an assistant or consultant, and prohibited him from attending medical staff meetings. (See the terms of the preliminary injunction issued by me on February 14, 1972.)

Paragraphs 14, 15, and 16 of the amended complaint set forth acts of the defendants Dr. Crane and Attorneys Soden and Millham that have to do with the initiation of the proceedings before the New Hampshire Board of Registration in Medicine to have plaintiff's license to practice medicine revoked, and the conduct of those proceedings. Paragraph 17 of the complaint alleges that Attorney Murphy, as treasurer and attorney for the defendant hospital, gave erroneous information to one or more persons to the effect that the plaintiff was incompetent as a practitioner of medicine and surgery.

The complaint asserts jurisdiction under 28 U.S.C. § 1343.

Immediately upon receiving notice of his exclusion from the medical staff of the hospital, plaintiff brought a petition for injunction in the Superior Court for the State of New Hampshire and, after two hearings, one on the question of whether or not a preliminary injunction should be issued, and the other on the merits, the New Hampshire Supreme Court upheld the trial court's findings and rulings that the exclusion was justified. Bricker v. Sceva Speare Memorial Hospital, 111 N.H. ——, 281 A.2d 589 (1971). The plaintiff's petition for writ of certiorari to the United States Supreme Court was denied on December 14, 1971. 404 U.S. 995, 92 S.Ct. 535, 30 L.Ed.2d 547.

The complaint, as amended, names nineteen different defendants which, for purposes of this opinion, I have separated into five categories: (1) physician members or past members of the medical staff of the Sceva Speare Memorial Hospital, hereinafter referred to as the staff; (2) present or past members of the Executive Committee of the Board of Directors of the Sceva Speare Memorial Hospital, including Attorney Murphy as treasurer, hereinafter referred to as the committee; (3) the Sceva Speare Memorial Hospital, hereinafter referred to as the hospital; (4) the Hartford Insurance Group, a/k/a five different companies, the Travelers Insurance Company, and the Interstate Fire and Casualty Company, hereinafter referred to as the companies; and (5) Attorneys Millham and Soden, hereinafter referred to as the attorneys.

The staff, the hospital, and the committee have moved to dismiss on the grounds of res judicata, collateral estoppel, want of jurisdiction, and lack of color of state law.

The companies moved to dismiss on the grounds of want of proper jurisdiction and failure to state a claim upon which relief can be granted.

Attorneys Millham and Murphy moved to dismiss on the grounds of res judicata, collateral estoppel, the New Hampshire statute of limitations, want of jurisdiction, and failure to state a claim upon which relief can be granted. Attorney Soden moved to dismiss on the last two grounds only.

Liberally construed and stripped to its "federal" essentials, the complaint alleges a conspiracy to deprive the plaintiff of his right to practice medicine because he testifies as an expert witness in medical malpractice cases and that, as part of the conspiracy, the defendants excluded him from the medical staff of the hospital and, in so doing, violated his constitutional right to due process of law by refusing to notify him of the charges against him prior to the hearing on his exclusion. There is nothing in the complaint from which it can be reasonably inferred that the plaintiff has been denied his constitutional right to "equal protection" of the law. No racial or class discrimination is alleged or even

intimated. The allegations as to the proceedings before the New Hampshire Board of Registration in Medicine are anticipatory and do not, at this stage in the proceedings, allege any constitutional violations.

■ The first question is whether or not the plaintiff has asserted grounds sufficient for federal jurisdiction. While the complaint does not so specify, I assume that plaintiff is relying on both 42 U.S.C. §§ 1983 and 1985.[1] Although I personally have serious reservations as to the advisability of using the Hill-Burton Act as a key to the Federal Courts in any civil rights case and particularly, one limited to due process, I recognize that the weight of authority holds that the acceptance of Hill-Burton funds is sufficient to cloak a private hospital and its medical staff with a mantle of state law.[2] I, therefore, rule that color of state law has been properly alleged and that there is jurisdiction under 28 U.S.C. § 1343(3).

■■ The next question is whether a cause of action upon which relief can be granted has been stated as to the different defendants under 42 U.S.C. § 1983. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); Birnbaum v. Trussell, 347 F.2d 86 (2nd Cir. 1965). The alleged violation of due process clearly involves the staff, the hospital, and the committee, and as to those defendants, I rule that a cause of action has been stated under 42 U.S.C. § 1983. Since no facts have been alleged sufficient to color the actions of the attorneys and companies with state law, they are not members of the class exposed to liability under 42 U.S.C. § 1983. Hanna v. Home Insurance Co., 281 F.2d 298 (5th Cir. 1960); Joyce v. Ferrazzi, 323 F.2d 931 (1st Cir. 1963); Contra, Gillibeau v. City of Richmond, 417 F.2d 426 (9th Cir. 1969). Furthermore, the allegations as to the attorneys do not in any way relate to the exclusion of the plaintiff from the medical staff of the hospital. I rule that as to Attorneys Millham and Soden and the companies no cause of action under which relief can be granted has been stated under 42 U.S.C. § 1983.

I next consider whether a cause of action has been stated under 42 U.S.C. § 1985 as to any of the defendants. The recent case of Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), leaves little room for doubt as to the scope and effect of 42 U.S.C. § 1985. Its holding that 42 U.S.C. § 1985(3) covers private conspiracies without any requirement of color of state law. puts to rest the questions raised by Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253 (1951). *Griffin* also defines the type of conspiracy giving rise to an action under section 1985(3):

> The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all. 403 U.S. at 102, 91 S.Ct. at 1798.[3]

While the facts alleged, if proved, would constitute a serious tort against the plaintiff, they do not state a federal

---

1. There is no basis for jurisdiction under 28 U.S.C. § 1331(a) Porter v. Bennison, 180 F.2d 523 (10th Cir. 1950).

2. Sams v. Ohio Valley General Hospital Assn., 413 F.2d 826 (4th Cir. 1969); Mizell v. North Broward Hospital District, 427 F.2d 468 (5th Cir. 1970); Meredith v. Allen County War Memorial Hospital Com'n, 397 F.2d 33 (6th Cir. 1968); Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959 (4th Cir. 1963). But see Powe v. Miles, 407 F.2d 73 (2nd Cir. 1968); Mulvihill v. Julia L. Butterfield Memorial Hospital, 329 F. Supp. 1020 (S.D.N.Y.1971).

3. See Huey v. Barloga, 277 F.Supp. 864 (N.D.Ill.1967), for an excellent discussion by Judge Will of 42 U.S.C. §§ 1983 and 1985 actions.

cause of action under 42 U.S.C. § 1985 as to any of the defendants.[4]

The motions to dismiss of the defendant attorneys (Attorney Millham and Attorney Soden) are granted. The motions to dismiss of the defendant companies are granted.

■ Since an action may be maintained for conspiracy to violate rights protected by 42 U.S.C. § 1983, Mizell v. North Broward Hospital District, 427 F.2d 468 (5th Cir. 1970), the plaintiff can proceed against the hospital, staff, and the committee unless he is barred by the doctrine of res judicata and collateral estoppel.[5] In Rankin v. State of Florida, 418 F.2d 482 (5th Cir. 1969), the court defined res judicata as follows:

> The doctrine of *res judicata* provides that, if a previous judgment is valid, and on the merits, it is an absolute bar in another case on the same cause of action between the same parties and their privies not only in respect of every grounds of recovery or defense which were presented but also as to every ground of recovery or defense which might have been presented.

Whether the plaintiff is barred from proceeding in the Federal Court depends upon what issues were actually decided in the State Court. The entire record of the New Hampshire State Court proceedings has been made available and is an exhibit for purposes of this decision.

In May, 1971, a hearing was held in the New Hampshire Superior Court on plaintiff's petition for injunction against the hospital. Plaintiff alleged and attempted to prove that the hospital violated its bylaws and denied him his right to due process of law by not giving him a statement of the charges against him before he was dismissed from the hospital staff. The trial court found:

> There was no requirement under the bylaws, or under general common law, that Dr. Bricker be given a written specification of the charges to be made against him prior to the vote on his reappointment. At page 4 of Decree.

The New Hampshire Supreme Court upheld the decision of the trial court and ruled:

> The initial question is the extent that the exclusion of a physician from staff privileges in a hospital is subject to review by the courts. Generally courts have drawn a distinction in such cases between public and private hospitals. See Annot., 37 A.L.R.3d 645 (1971); The Physician's Right to Hospital Staff Membership: The Public-Private Dichotomy, Wash. U. L.Q. 485 (1966). In the present case the acceptance of federal and town funds in addition to private contributions and income from patient care has not changed the private character of the defendant hospital. Bricker v. Sceva Speare Memorial Hospital, *supra*, 281 A.2d at pages 591–592.

The Court went on to hold that the public has such a substantial interest in private hospitals that "exclusion from staff privileges must be done in accordance with the bylaws of the hospital," page 592, and that the staff's failure to reap-

---

4. There is presently pending in this court a civil tort action against the three insurance companies (Civil No. 3354) alleging a conspiracy to deprive the plaintiff of his right to practice medicine because of his appearance in malpractice cases as a medical expert; jurisdiction is based on diversity of citizenship and jurisdictional amount. 28 U.S.C. § 1332. This case is now in the discovery stage.

The allegations in paragraph 4 of the complaint as to material alterations of court records and subornation of perjury in the New Hampshire State Court proceedings strongly suggests the possibility of State criminal proceedings.

5. The term res judicata is frequently used to cover merger, bar, collateral estoppel, and direct estoppel. Lawlor v. National Screen Service, 349 U.S. 322, 326, n. 6, 75 S.Ct. 865, 99 L.Ed. 1122 (1955). See Restatement, Judgments, sections 47, 48, and 68 (1942, 1948 Supp.).

point the plaintiff was not arbitrary, capricious or unreasonable.

Plaintiff then petitioned for a writ of certiorari to the United States Supreme Court, which was denied. Plaintiff's next step was the filing of this complaint.

 It is clear that the Federal constitutional question of due process was not decided by the State Court since the preliminary issue of state involvement sufficient to give rise to such due process rights was decided adversely to the plaintiff. It may be that the State Court incorrectly decided the question of state action. That would indeed be unfortunate since there can be no cause of action under 42 U.S.C. § 1983 without first crossing the threshold of "color" of state law. But whether the New Hampshire decision as to lack of state action was correct is immaterial since, when certiorari was denied by the United States Supreme Court, the matter was at an end because that was the plaintiff's only and final recourse.[6] The degree of state action necessary to sustain a complaint under 42 U.S.C. § 1983 can certainly be no less than that required to violate the Fourteenth Amendment right to due process since the cause of action is no broader than the right it is intended to protect. Since the New Hampshire Supreme Court has decided that there was no prohibited state action on the part of the hospital sufficient to invoke the Fourteenth Amendment, the plaintiff is estopped from again raising the issue for a claimed violation of his civil rights under 42 U.S.C. § 1983.

 I realize that res judicata should be used sparingly in civil rights actions and that its application is only proper when there has been a previous action between the same parties or their privies involving the same subject matter, and terminating in a final judgment on the merits. Rhodes v. Jones, 351 F.2d 884 (8th Cir. 1965); Frazier v. East Baton Rouge Parish School Board, 363 F.2d 861 (5th Cir. 1966). In this action, the plaintiff has added new defendants and alleged a new cause of action. But the addition of individual members of the medical staff, the hospital's executive committee, and Attorney Murphy, and the allegation of conspiracy does not afford new grounds for finding "color" of state law.

The doctrine of collateral estoppel requires that the earlier decision and judgment on the merits bar relitigation of this issue, even though the State Court decision was based on a different cause of action. Lawlor v. National Screen Service, 349 U.S. 322, 326, 75 S. Ct. 865, 99 L.Ed. 1122 (1955). Even if I assume that privity of parties is required in the issue preclusion type of res judicata, the facts and circumstances show that the staff and committee are closely connected with the hospital and are entitled to the benefit of the New Hampshire Supreme Court ruling that this was a private hospital.

 A Federal District Court cannot review a question already decided by a State Court. Skolnick v. Martin, 317 F. 2d 855 (7th Cir. 1963); Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); 1B Moore's Federal Practice 934 (1965). There is an exception to the rule in habeas corpus proceedings, Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), but this exception has not been extended to civil rights suits. Rhodes v. Meyer, 334 F.2d 709 (8th Cir. 1964).[7]

6. There is a difference of opinion as to the effect of the denial of a petition for writ of certiorari, but while the denial itself may not be authority for any kind of a Supreme Court holding, it does at least signify that the United States Supreme Court has, for some reason, decided not to hear the case and the appellate procedure has terminated. See Maryland v. Baltimore Radio Show, Inc., 338 U.S. 912, 70 S.Ct. 252, 94 L.Ed. 562 (1950).

7. Kauffman v. Moss, 420 F.2d 1270 (3rd Cir. 1970), and Mulligan v. Schlacter, 389 F.2d 231 (6th Cir. 1968), are not contra; they merely hold that an unreversed conviction cannot by itself require dismissal as res judicata.

Res judicata and collateral estoppel aside, the holding and reasoning of England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), is an insurmountable barrier to plaintiff's advance into this court:

It might be argued that nothing short of what was done in *Button* [NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405] should suffice—that a litigant should retain the right to return to the District Court unless he not only litigates his federal claims in the state tribunals but seeks review of the state decision in this Court. But we see no reason why a party, after unreservedly litigating his federal claims in the state courts although not required to do so, should be allowed to ignore the adverse state decision and start all over again in the District Court. Such a rule would not only countenance an unnecessary increase in the length and cost of the litigation; it would also be a potential source of friction between the state and federal judiciaries. We implicitly rejected such a rule in *Button*, when we stated that a party elects to forgo his right to return to the District Court by a decision "to seek a complete and final adjudication of his rights in the state courts." We now explicitly hold that if a party freely and without reservation submits his federal claims for decision by the state courts, litigates them there, and has them decided there, then—whether or not he seeks direct review of the state decision in this Court—he has elected to forgo his right to return to the District Court. At pages 418–419, 84 S.Ct. at page 466.

I realize that *England* is an abstention case but its reasoning applies with full force to this situation. Unlike the plaintiffs in *England*, Dr. Bricker chose the State Court initially as his forum. He could have started in this court or, having brought suit in the State Court, limited his claim to a violation of the hospital bylaws; in either case, his option of an initial Federal District Court determination on the "color" of state law issue would have remained open. He lost that option by litigating his Federal claims to final judgment in the State Court.

The motions of the defendant hospital, staff, and committee, including Attorney Murphy, to dismiss are granted.

No costs to any party.

The preliminary injunction shall remain in full force and effect until the appeal period expires or, if an appeal is taken from this order, until final decision.

So ordered.

Where Federal District Courts have not dismissed on the grounds of res judicata, the Supreme Court has overruled or later expressed disagreement. Howard v. Ladner, 116 F.Supp. 783 (S.D.Miss., Jackson Div. 1953), vacated White et al. v. Howard et al., 347 U.S. 910, 74 S.Ct. 476, 98 L.Ed. 1067 (1954) ; Tribune Review Publishing Co. v. Thomas, 153 F. Supp. 486 (W.D.Pa.1957), aff'd 254 F.2d 883 (3rd Cir. 1958), criticized in England v. Medical Examiners, *infra*.

I am aware of Judge Rives' dissent in Brown v. Chastain, 416 F.2d 1012 (5th Cir. 1969), in which he argues that civil rights cases should not be barred from the Federal Courts by the doctrines of res judicata and collateral estoppel. It is to be noted also that the A.L.I. study of The Division of Jurisdiction Between State and Federal Courts, Tentative Draft Nos. 6, 72 (1968) takes the view that the jurisdiction of the Federal Courts should be extended to cover all cases in which the meaning or application of the Constitution, law, or treaties of the United States is a principal element in the position of either party. But the A.L.I. Draft recognized that this view is not the law.