Cunnie CATO et al., Plaintiffs,

v.

SOUTH ATLANTIC & GULF COAST DISTRICT OF the INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, et al., Defendants.

Civ. A. No. 71–G–109.

United States District Court, S. D. Texas, Galveston Division.

April 20, 1973.

---

Hubert L. Gill, Austin, Tex., for plaintiffs.

Warner Brock, of Brock & Williams, Houston, Tex., for defendant South Atlantic & Gulf Coast ILA.

V. W. McLeod, of McLeod, Alexander Powel & Apffel, Galveston, Tex., for defendant Board of Trustees, Galveston Wharves.

## MEMORANDUM OPINION

NOEL, District Judge.

On March 12, 1973, the Court denied the motion of defendant South Atlantic & Gulf Coast District, International Longshoremen's Association (hereinafter "district union") for summary judgment and dismissed with prejudice the plaintiffs' claims against defendants

Board of Trustees, Galveston Wharves and the City of Galveston (hereinafter "Wharves and City"). This Memorandum Opinion explains the reasons for those actions.

## I. *Claim against the District Union*

Plaintiffs' claim of misrepresentation by defendant district union assumes that defendant had the duty to fairly represent the individual members of the local union. Courts have implied a duty of fair representation on the part of union organizations from the provisions of the Railway Labor Act, as amended, 45 U.S.C. § 151 et seq. (1970). Steele v. Louisville & Nashville R. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944); Richardson v. Texas & New Orleans R. R. Co., 242 F.2d 330 (5th Cir. 1957). Nonetheless, this defendant is a district organization, an intermediary between the local union and the international brotherhood. Defendant contends it does not represent the individual members and therefore had no duty of fair representation. The evidence presented by plaintiffs rebuts defendant's claim.

The Constitution of the South Atlantic and Gulf Coast District governs the local unions and provides that "All locals . . . . shall consult the District or International Officers when in a crisis, instead of consulting outside affiliations and/or resorting to the Courts." Article XIX. The testimony demonstrates that in fact Local 1513, whose former members are plaintiffs here, regularly and repeatedly went to the district officers "when in a crisis" for advice and assistance. Aid, including legal counsel when appropriate, was freely given by the district union. Other provisions of the constitution grant the district organization considerable authority over the operation of local unions and over their individual members. There is no evidence indicating that these provisions are ignored.

In addition, as stipulated by the parties, the defendant district union was the recognized bargaining representative of the plaintiff employees. Stipulation O.

Approval of the district office was necessary before the local organization could ratify a new contract.

This evidence demonstrates that both on paper and in practice, the defendant district union acted as representative of the individual union members in their important contacts with the employer. As such, the defendant assumed the responsibility and legal duty to fairly represent the individual members. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Brady v. Trans World Airlines, Inc., 401 F.2d 87 (3rd Cir. 1967).

Plaintiffs contend that officials of defendant district union breached this duty with regard to a lawsuit against the Wharves and City and others. Plaintiffs claim the district officers made statements which mislead plaintiffs into believing such a suit had been filed on their behalf. Plaintiffs also argue that the officials breached their duty by failing to affirmatively tell plaintiffs that in fact no suit had been filed. Plaintiffs thus allege both action and inaction which breached defendant's duty to plaintiffs and caused damage to plaintiffs.

Defendant responds that there has been no showing of bad faith on the part of union officials as required by Steele v. Louisville & Nashville R. R. Co., supra and its progeny. See Gainey v. Brotherhood of Railway Clerks, 313 F.2d 318 (3rd Cir. 1963). Defendant points out that union officials, along with several of the plaintiffs, worked with the new management of Elevator B in an attempt to obtain jobs for old employees. According to defendant, this approach, rather than litigation, was considered more likely to benefit the former members of Local 1513.

This line of argument obscures the issue. Plaintiffs do not complain of the district union's attempts to obtain jobs or its failure to file a lawsuit. Plaintiffs complaint is that they were not told about the decision not to sue and were in fact mislead into believing a suit was pending. The gravamen of

their complaint is that the plaintiffs were thereby precluded from individually deciding whether or not to sue.

Several Local 1513 members were never rehired at Elevator B. Those who were rehired, still lost considerable benefits which were legally recoverable. United Industrial Workers of Seafarers v. Board of Trustees of the Galveston Wharves, 400 F.2d 320 (5th Cir. 1968), cert. denied 395 U.S. 905, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969) (hereinafter "S.I.U. suit"). These members might well have desired to file a claim or join the existing S.I.U. suit. Plaintiffs contend that defendant's action prevented such a decision.

The evidence suggests that defendant district union sought favorable relations with the new management and new employees with the eventual goal of representing the new bargaining unit at Elevator B. The testimony also raises the inference that union official's failure to tell the Local 1513 members of the decision not to sue, and union official's ambiguous statements concerning the issue were calculated to prevent suit by Local 1513 members as part of the attempt to establish good relations with the new management of Elevator B. As such, defendant's action is clearly hostile to the interests of Local 1513 members who were not rehired at Elevator B. Defendant's conduct is also adverse to the interests of any member who might have wanted to sue the Wharves and City in an attempt to recoup past benefits. Brady v. Trans World Airlines, Inc., supra.

Plaintiffs' evidence indicates that defendant was willing to trade off the interests of the old employees of Local 1513 in exchange for good relations with the new management and employees. The burden of justifying this conduct now shifts to defendant. Ferro v. Railway Express Agency, Inc., 296 F.2d 847 (2nd Cir. 1961).

■ Defendant's final major contention is that the two-year statute of limitations bars this cause of action which is based on events which took place in 1964. Plaintiffs maintain that the misrepresentations made by defendant's officers concealed the facts of the situation until March 1970, when plaintiffs discovered that they were not parties to the S.I.U. lawsuit. Thus, plaintiffs conclude, the statute of limitations was tolled until that date. Defendant responds that the facts are such as to give plaintiffs effective notice long before 1970. On balance, the Court finds that plaintiffs did not have notice of the relevant facts until March 1970. Therefore, plaintiffs' cause of action against the defendant district union is not barred by the statute.

Thus the Court has concluded that plaintiffs' cause of action against the South Atlantic and Gulf Coast District cannot be dismissed at this point and that the trial of the case shall resume.

II. *Claim against the Wharves and the City*

Plaintiff's cause of action against the Board of Trustees, Galveston Wharves and the City of Galveston is based on two theories of law. First, plaintiffs contend that Wharves and City violated the Railway Labor Act, as amended, 45 U.S.C. § 151 et seq. (1970), thereby injuring plaintiffs. Defendants Wharves and City assert the statute of limitations as a bar to this cause of action. Secondly, plaintiffs allege that defendants have violated the Civil Rights Act, 42 U.S.C. § 1981 (1970), by their failure to afford relief to plaintiffs on the same basis as the settlement made with S.I.U. Defendants Wharves and City maintain that the facts of this case do not constitute a violation of 42 U.S.C. § 1981 (1970).

A. *Railway Labor Act allegation*

The Railway Labor Act claim relates to action by defendants on July 31, 1964 in their capacity as owners and operators of Elevator B. On that date, defendants shut down operation of Elevator B, thereby terminating plaintiffs' employment without giving the thirty

(30) days prior notice and the opportunity to bargain required by the Act. Plaintiffs assert the same claim pressed successfully by another group of employees in the S.I.U. suit which began shortly after the shutdown.

Defendants maintain that the statute of limitations bars plaintiffs' claim relating to the 1964 action but not filed until July 22, 1971. Defendant's objection has obvious merit.

■ Plaintiffs respond that the statute was tolled because, due to misrepresentations by union representatives, plaintiffs believed they were parties in the pending S.I.U. suit. As contended by plaintiffs, the statute of limitations is considered tolled when the right to institute suit is fraudulently concealed by the party against whom it accrued, or when the cause of action was concealed by its very nature. See Crummer v. DuPont, 223 F.2d 238 (5th Cir. 1954).

■■ Nonetheless, as plaintiffs admit, neither the Board of Trustees, Galveston Wharves nor the City of Galveston made any fraudulent misrepresentations to plaintiffs which prevented them from filing suit. Generally the acts of third parties in concealing a cause of action will not prevent the running of the limitations period as to the real defendant. The action by union officials can preserve plaintiffs' claim against the defendant district union, but it cannot save their claim against these defendants.

Plaintiffs rely on several cases which allow late filings on equitable grounds. Those cases are inapposite here. In two cases, the individual had been completely prevented from filing suit because of World War II. Osbourne v. United States, 164 F.2d 767 (2nd Cir. 1947) (plaintiff a prisoner of war); Frabutt v. New York, Chicago R. R. Co., 84 F. Supp. 460 (W.D.Pa.1946) (plaintiffs residing in Italy). In the other two cases, the plaintiffs had filed timely claims but in the wrong forum. Burnett v. New York Central R. R. Co., 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965) (state court); Mizell v. North Broward Hospi-

tal District, 427 F.2d 468 (5th Cir. 1960) (state administrative board).

In this case, plaintiffs have not been so diligent in pursuing their rights against these defendants. Although their failure to more vigorously prosecute their claims is not fatal to the suit against district union, it seriously prejudices their request for equitable consideration in their claims against the Wharves and City.

The analogy to a delinquent lawyer is appropriate. Misrepresentations by a lawyer as to the filing of a suit may support a cause of action against the lawyer but does not extend the time for filing suit against the original defendant. Similarly, with respect to defendants Wharves and City, plaintiffs are bound by their union representatives' failure to sue within the statutory period.

## B. *Civil Rights Act allegation*

■ Plaintiffs' second theory of recovery alleges a continuing violation of the Civil Rights Act, 42 U.S.C. § 1981 (1970), by defendants' refusal to provide these former employees with the same settlement given the S.I.U. members. This claim is predicated on the fact that until 1964, the two unions representing Elevator B employees were segregated. The S.I.U. members, plaintiffs in the earlier case, were all Caucasian. The Local 1513 members, plaintiffs here, were all Negro. Plaintiffs point out that although both groups were improperly terminated under virtually identical circumstances, defendants Wharves and City have provided compensation to the S.I.U. members without providing the Local 1513 members any money. Thus, plaintiffs argue, defendants violated plaintiffs' right to equal treatment as protected by 42 U.S. C. § 1981 (1970).

Plaintiffs' attempt to apply § 1981 to the facts of this case is unpersuasive. Plaintiffs' novel theory finds no support in either the statute, jurisprudence, or logic.

The terms of § 1981 provide all citizens the same legal rights as are enjoyed by Caucasian citizens and also subjects them to the same penalties. Defendants Wharves and City have not run afoul of these provisions. Defendants' settlement with S.I.U. cannot be considered a boon, demonstrating favoritism toward Caucasian employees. The settlement came after several years of hard fought litigation. Only after a final judicial determination that the Wharves and City were liable did defendants settle the lawsuit. The plaintiffs in this case were not offered any money for the plain and simple reason that they were not parties to the lawsuit.

Plaintiffs contend that defendants must give Negroes who did not file suit the same funds as provided Caucasians who did file suit. The statute does not compel this result. And none of the cases brought to the Court's attention suggest such a construction.

If § 1981 has any bearing on these facts, it is in support of defendants. Section 1981 subjects all persons to "like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." This provision prohibits defendants from offering plaintiffs a settlement. Had a group of Caucasians occupied plaintiff's position and failed to timely file suit, defendants certainly would not have offered them a settlement and no court would have compelled defendants to do so. Section 1981 requires that plaintiffs as Negroes not be provided legal privileges denied similarly situated Caucasians. The penalty for failure to file a timely claim is loss of any right of recovery. Under 42 U.S.C. § 1981, that penalty must be applied where appropriate, regardless of the claimant's race.

Thus, the Court has concluded that plaintiffs' cause under the Railway Labor Act, 45 U.S.C. § 151, et seq. (1970) is barred by the statute of limitations and that the Civil Rights Act, 42 U.S.C. § 1981 (1970) does not support plaintiffs' claim.

Therefore, plaintiffs' cause of action against the Board of Trustees, Galveston Wharves and the City of Galveston must be dismissed.