Coleman, Circuit Judge, dissented and filed opinion.

**Von D. MIZELL, Plaintiff-Appellant,**

**v.**

**NORTH BROWARD HOSPITAL DIS-
TRICT et al., Defendants-
Appellees.**

**No. 27488.**

United States Court of Appeals,
Fifth Circuit.

March 25, 1970.

Rehearing En Banc Denied
July 13, 1970.

Frank D. Reeves, Washington, D. C., Jack P. LaMarr, Fort Lauderdale, Fla., John B. Orr, Jr., Pompano Beach, Fla., Robert Reinstein, Philadelphia, Pa., for plaintiff-appellant; Charles L. Fishman, Washington, D. C., on the brief.

Michael Davis, Fort Lauderdale, Fla., William Dunaj, Aubrey V. Kendall, Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, Fla., McCune, Hiaasen, Crum & Ferris, Fort Lauderdale, Fla., for defendants-appellees; Watson, Hubert & Davis, Fort Lauderdale, Fla., of counsel.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC *

Before TUTTLE, COLEMAN and SIMPSON, Circuit Judges.

TUTTLE, Circuit Judge:

It appears that, in our original opinion, we overlooked the principle of law, agreed upon by both parties, that " *  *  * as a matter of law, when an action is brought for both damages and equitable relief, the statute of limitations, and not laches, controls both the equitable and legal part." It is, therefore, necessary for us to modify our opinion respecting the matter of laches. We think it simpler to make the necessary correction by withdrawing our previous opinion and by substituting the following corrected opinion.

* In light of the fact that a new opinion and judgment are being issued and entered, no ruling is made with respect to the petition for rehearing en banc.

This is the second appearance of this case in this court. The action was instituted in the trial court by the filing on March 2, 1967 of a complaint by Dr. Von D. Mizell, seeking damages and injunctive relief allegedly caused by an invasion of the plaintiff's civil rights, in violation of Sections 1981, 1983 and 1985, of Title 42 of U.S.C.A., and alleging federal jurisdiction on the basis of Title 28, Section 1343, U.S.C.A.

On May 23, 1967, the defendants moved to dismiss the complaint for failure to state a claim upon which relief could be granted, and, after hearing, the court granted this motion and dismissed the complaint with prejudice. This order was reversed by this court, which thus held that a cause of action was alleged in the complaint. See Mizell v. North Broward Hospital District, et al., 5 Cir., 1968, 392 F.2d 580.

When the case was remanded to the trial court, further pleadings were filed by the defendants, including a plea of a bar by the statute of limitations, in light of the fact that the complaint alleged one continuing conspiracy and an overt act resulting in serious damage to the plaintiff when the defendant's Board, on July 19, 1961, suspended his surgical privileges in all hospitals operated and maintained by the defendant Hospital District, "subject to consideration of an application for reinstatement at any time one year subsequent to the effective date of the suspension;" and then alleged a further overt act on May 24, 1965, when the District Court of Appeals of Florida, Second District, affirmed the suspension, up to which time by virtue of a court order, plaintiff continued to exercise his surgical privileges; and then alleged a third overt act when, on February 17, 1967, the defendants entered an order denying plaintiff's application for reinstatement, which he had filed with the Board.

The trial court applied the state statute of limitations, which both parties concede to be the proper procedure where no statutory limit is fixed in the appropriate federal statute, and held that in a single conspiracy case the statute of limitations begins to run from the date of the first overt act causing injury to the plaintiff. Thereupon, the court dismissed the complaint by sustaining a motion for summary judgment.

The trial court, of course, never reached the basic contention of the plaintiff that the action of the Board was racially motivated, and this issue is not now before us. The trial court entered its order based upon the following stipulation as to the facts:

(a) The plaintiff is and at all times material herein was a Negro, a citizen of the United States, a resident of Broward County, Florida, and is licensed to practice medicine in the State of Florida.

(b) In 1951, pursuant to Chapter 27438, Laws of Florida 1951, the North Broward Hospital District was created as a special taxing district of the State of Florida.

(c) From 1951 until July 19, 1961 the appointment of plaintiff as an officer and member of the surgical staff at Provident Hospital was repeatedly and consistently approved by the defendant North Broward Hospital District.

(d) On September 10, 1961 a hearing was held by the defendant District's Board of Commissioners that resulted in the entry of an order by defendant's Board on September 20, 1961 approving the July 19, 1961 suspension of plaintiff's surgical privileges in all hospitals operated and maintained by defendant District, subject to consideration of an application for reinstatement at any time one year subsequent to the effective date of the suspension.

(e) The plaintiff challenged the validity of the suspension described in the preceding paragraph in the courts of the State of Florida, which litigation resulted ultimately in an affirmance of the suspension by the District Court of Appeal of Florida, Second District, on May 24, 1965. Notwithstanding the defendant Board's suspension order of September 20, 1961,

plaintiff continued, except for two minor periods of time, to exercise his surgical privileges pursuant to court order.

(f) On or about April 14, 1966, Dr. Mizell made application to defendant North Broward Hospital District for reinstatement. In response thereto, defendant District furnished plaintiff with (a) a document entitled, "Recommendations from the Surgical Department for Reinstatement of Dr. Von D. Mizell," dated August 1, 1966, allegedly based upon a review by members of the Broward General Hospital Staff of the charts of 65 general surgical cases and 36 gynecological cases done by plaintiff at Broward General Hospital prior to the effective date of his suspension and recommending that plaintiff's application for reinstatement be denied, and (b) notice of a hearing upon said application.

(g) On January 18, 1967, a hearing was held by defendant District's Board of Commissioners to consider plaintiff's application for reinstatement of his surgical privileges in all hospitals operated by the District.

(h) On February 17, 1967, the Board of Commissioners entered an order denying plaintiff's application for reinstatement described in the preceding paragraph.

(i) On January 18, 1967 and February 17, 1967 the following persons were members of the Board of Commissioners of the defendant North Broward Hospital District: W. B. Leonard, Hamilton Forman, Chester J. Maxson, Louis W. King, F. K. Walker and Mrs. Lois Swartzbaugh.

The plaintiff's position with respect to the statute of limitations is twofold: (1) while conceding that the state statute is to be applied,[1] it is the contention of the appellant that since overt acts as a part of the conspiracy occurred within the period of limitations, the trial court erred in dismissing the complaint on the ground that the statutory period began to run on the date of the first overt act causing serious damage to the plaintiff. It is appellant's contention here that in effect the occurrence of any overt act alleged in the conspiracy charge that occurred within the statutory period would keep the statute open for an additional statutory period. Both parties rely on Crummer Co. v. DuPont, 5 Cir., 1955, 223 F.2d 238, as supporting their theories under this point of the argument. (2) Appellant takes the position that it is not necessary to point to the date of any particular overt act to determine the time the statute began to run, because he contends that his administrative efforts and his litigation in the state court, seeking relief from the allegedly illegal conduct of the Board in 1961, tolled the running of the statute until the final decision of the Florida courts in 1965. It is not disputed that the present suit was commenced within a period of three years following the termination of that litigation.

Before getting to the basis for the judgment of dismissal, it is necessary for us to consider several other rulings made by the trial court in view of the fact that it will be necessary for the case to be remanded for trial.

At the time of the hearing in the district court the law with respect to Section 1981 was, we think, to be determined by reference to the Supreme Court's decision in Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189, which had been decided in June, 1968. The trial court here said:

"Turning first to section 1981, a cursory inspection reveals that this section is simply a broad pronouncement that all persons within the United States shall have the same right to

---

1. The defendants asserted that the Florida 4-year "catch all" statute, Fla.Stat.Ann., Section 95.11(4) applied. The plaintiff contends that in reality the 3-year statute provided for in Fla.Stat.Ann., Section 95.11(5) (a) applied. However, neither party contends that it makes any difference to our disposition of the case whether the 3 or 4 year statute was applicable.

full and equal benefit of all the laws and proceedings for the security of persons and property, as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, and so forth.

"It is important here to note that a damage suit cannot be predicated upon section 1981 because it makes no provision for civil damages or any other form of civil relief."

Jones v. Mayer, of course, dealt with section 1982, which, so far as is here pertinent, is precisely like 1981 in that it makes no provision for "civil damages or any other form of civil relief." Section 1982 provides "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold and convey real and personal property." We can see no conceivable difference between the language of Section 1982 and Section 1981 that would justify our affirming the decision by the trial court here that "a damage suit cannot be predicated upon Section 1981." Sullivan v. Little Hunting Park, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1970). Nor, for that matter, can it be held that there is no right to injunctive relief. That matter, also, was dealt with as to Section 1982 in Jones v. Mayer, supra.

The trial court then gave short shrift to the cause of action asserted under Section 1983. The court said, "Although 1983 gives a remedy at law or in equity against a person acting under color of state law, who deprives another of rights, privileges or immunities, it does not provide a cause of action for conspiracy to deny due process or other rights, and it cannot be used for that purpose; in this regard see Hanna v. Home Insurance Co., 281 F.2d 298, 5 Cir., 1960.

"Since neither section 1981 nor 1983 mentions the words 'conspiracy' it has been held that a cause of action for such a conspiracy is not cognizable in the federal courts, and this is the announced rule in the Fifth Circuit. See 15 Am. Jurisprudence 2d, 416, at Section 14, under Civil Rights, and the *Hanna* case."

It appearing that what was said with respect to this matter in the *Hanna* case, supra, was dictum, we are guided by what has more recently been said in Mansell v. Saunders, 5 Cir., 1967, 372 F. 2d 573, where, dealing with section 1983, this court said:

"We hold that appellants stated causes of action under 42 U.S.C.A. § 1983. This statute embraces deprivation or (sic) both due process of law and equal protection of the laws, and the action charged was under color of state law. * * * It contemplates such deprivation through the unconstitutional application of a law by a conspiracy or otherwise."

We think this view is bolstered by the language of the court in Nesmith v. Alford, 5 Cir., 1963, 318 F.2d 110, 126. The court there said:

"In the Plaintiff's complaint and in the pretrial order outlining the issues for the trial then to be held * * * the Plaintiffs asserted the theory of a conspiracy among the several police officers and city officials to violate their Civil Rights. Of course, for a claim under § 1983, a conspiracy as such is not an indispensable element as it is under § 1985. But it may be charged as the legal mechanism through which to impose liability on each and all of the Defendants without regard to the person doing the particular act. Conspiracy is asserted in that situation on more or less traditional principles of agency, partnership, joint venture, and the like."

Moreover, the complaint here alleges that the defendant's conspiracy to deny Dr. Mizell his hospital privileges was actually carried into effect. This would meet the exception noted in the *Hanna* case, even if it were now applicable. See also Lewis v. Brautigam, 5 Cir., 1955, 227 F.2d 124, 127–128, 55 A.L.R.2d 505, and Hoffman v. Halden, 9 Cir., 1959, 268 F.2d 280, 292–293.

■ Furthermore, it is impossible to perceive any reason why the cause of action, which, as we now hold, the Supreme Court has, in effect, stated arises in favor of an aggrieved person under 1981, cannot be asserted against a "conspiracy" as well as against a single individual. We, therefore, conclude that the trial court erred in holding that a cause of action based upon an alleged conspiracy could not be posited upon Section 1981 or 1983.

■ We next turn to the court's treatment of Section 1985. With respect to this section which the trial court found provided the basis for a claim for relief only for damages, the court said: "The simple answer to this is that section 1985(3) limits recovery thereunder to damages and makes no provision whatever for injunctive or other equitable relief." This statement, while made in response to plaintiff's suggestion that the principle of laches should apply, rather than a state statute of limitations, nevertheless seems clearly to express the trial court's view that it would be powerless to enter an injunction in the event the plaintiff's proof showed he was otherwise entitled to it. We think that the Supreme Court's decision in Jones v. Mayer also resolved this issue. As we have pointed out above, Section 1982, which was before the court for consideration, gave no authority for the granting of an injunction or the granting of damages. Nevertheless the court held that both powers would be available to a court upon proof of facts bringing the plaintiff within the terms of the Civil Rights Act there involved. We think the same power is available to a trial court in an action brought under Section 1985, even though that section refers in precise terms only to a suit for damages. As the court said there, in footnote 13, 392 U.S. at page 414, 88 S. Ct. at page 2190, "The fact that 42 U.S. C. § 1982 is couched in declaratory terms and provides no explicit method of enforcement does not, of course, prevent a federal court from fashioning an effective equitable remedy [citing cases]."

We now turn to the issue raised by the plea of the statute of limitations.

We deal with the second prong of the argument first. That is to say that the state statute was tolled during the period in which the plaintiff was engaged in appealing the action of the defendants in the state administrative and judicial tribunals. To begin with, two things are to be noted: The first is that the results sought in the state proceedings were the same as the results sought here to the extent that they sought plaintiff's reinstatement to his privileges in the hospital. The second is that what may be called the "cause of action" proceeded on in the state courts, was, of course, entirely different from the "cause of action" under Sections 1981, 1983 and 1985.

Appellant takes the position that while the federal court, sitting in a federal question case, properly applies a state statute of limitations where none is provided for in the federal statute sued upon, the federal court has the duty to apply a federally fashioned rule with respect to what constitutes "tolling." Conceding that there are no cases precisely in point, the appellant relies heavily upon the judicial philosophy thought to be expressed in Burnett v. New York Central R.R., 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965). Appellant also relies upon the federally stated policy contained in Title VII of the Civil Rights Act of 1964, 42 U.S.C. A. § 2000e et seq., which prohibits racial discrimination in employment. Appellant points specifically to the federal policy contained in that portion of Title VII which defers to state created remedies to resolve the same issue that otherwise would be ready for consideration by the Equal Employment Opportunities Commission.

Much can be said in favor of the court's adoption of a rule with respect to "tolling" that would further the policy of permitting state resolution of problems of this nature, or the pursuing of

grievance procedures as authorized in bargaining contracts with employees.[2]

■■ Having in mind the salutary rule that under our system of federalism aggrieved persons should be encouraged to utilize state procedures before appealing to the federal courts cf Henry v. Mississippi, 379 U.S. 443, 452, 453, 85 S.Ct. 564, 13 L.Ed.2d 408, we are persuaded that in cases arising under the constitution or laws of the United States, a federal rule on tolling a state statute of limitations (when applicable) should be observed, if such rule clearly carries out the intent of Congress or of the constitutional principle at stake.

In the Burnett case, supra, the court was, of course, dealing with a federal statute (F.E.L.A.) and a federal statute of limitations. The court found that the federal statute which had run, was no bar to a suit in the United States Court, because it had been tolled during the time the plaintiff had litigated unsuccessfully[3] in the state court. However, the Supreme Court articulated certain principles touching on the purpose and construction of statutes of repose that are broader than the case before it. The Court said:

> "Statutes of limitations are primarily designed to assure fairness to defendants. Such statutes 'promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. * *'
>
> "This policy of repose, designed to protect defendants, is frequently outweighed, however, where the interests of justice require vindication of the plaintiff's rights. * * *
>
> "Considerations in favor of tolling the federal statute of limitations in

this case are similar to those leading to an extension of the limitation period in the cases mentioned above. Petitioner here did not sleep on his rights but brought an action within the statutory period in a state court of competent jurisdiction." 380 U.S. 428, 429, 85 S.Ct. 1054, 1055.

Several courts have recognized that this language should be read as having implications beyond the narrow scope of the case before it. See Berry v. Pacific Sportfishing, Inc. (9th Cir., 1967), 372 F.2d 213; cf Atkins v. Schmutz Mfg. Co. (4th Cir., 1968), 401 F.2d 731.

■■ We think that it is clearly within the underlying purpose of the Civil Rights Acts to encourage utilization of state administrative and court procedures to vindicate alleged wrongs under a state-created cause of action before requiring a plaintiff to bring his federal suit to prevent his being barred by a state statute of limitations. Thus, although the federal courts apply a state limitations statute in suits to vindicate a federal right, they look to the federal purpose, policy and intent of Congress as to the objectives of the legislation in determining whether the pursuit of state remedies tolls this statute.

■■ Since the trial court did not consider such a standard, we must remand to the trial court for the purpose of doing so. The trial court should decide whether under such a federal standard this statute here was tolled as to the overt act occurring in 1961.

In the event that the trial court should decide against the appellant on this issue, it will then deal with the alleged conspiracy as to the remaining two overt acts. This would be necessary because of our construction of the *Crummer* case hereafter discussed.

2. We have just held in a case brought by an individual under Title VII that the statutory period within which he must bring his proceeding before the commission is to be "tolled" pending his following grievance procedures which are provided for under his bargaining agreement with the company. See Culpepper v.

*Reynolds Metals Co.*, decided Jan. 8, 1970, 421 F.2d 888.

3. The state court had dismissed this suit for want of proper venue, although the defendant railroad had been served and had appeared specially.

Since the trial court placed its dismissal of the suit on its construction of our decision in Crummer Co. v. Du Pont, 5 Cir., 1955, 223 F.2d 238, cert. den., 350 U.S. 848, 76 S.Ct. 85, 100 L.Ed. 755, it is necessary for us to consider this aspect of the limitations question. The appellee contends that once it is conceded, as here it must be, that the first overt act alleged in the complaint occurred in 1961, and thus outside the limitation period provided for in the statute, a complaint based on a single conspiracy charging such overt act, as well as others which occurred within the statutory period, is barred by the statute of limitations as to all acts, no matter whether the subsequent overt acts are claimed to have resulted in substantial damage or not. The appellant, on the other hand, while initially contending that the statute did not commence to run until the last overt act charged in the complaint, now concedes that if the statute applies, and if it was not tolled, it remains open only as to those overt acts which fall within the statutory period. In this case that would include the acts alleged to have occurred in 1965 and 1967.

It appears from a consideration of the facts in the *Crummer* case that there was no issue before this court which required a decision whether the statute of limitations applicable in a suit for conspiracy alleging several overt acts began to run upon the completion of the first overt act alleged in point of time. The facts in the *Crummer* case clearly demonstrate that *all* the overt acts alleged as a part of that conspiracy had occurred outside the period of limitations as extended by the federal moratorium act. This court clearly indicated that any acts causing damage that might have occurred subsequent to the first one alleged could have been the basis of a recovery, even though charged as an overt act in a single continuing conspiracy, if the subsequent act had not itself also been barred. This reading of the *Crummer* case is supported by our later decision in DeLaughter v. Borden Co., 5 Cir., 1966, 364 F.2d 624, at page 628:

"In *Crummer* we viewed each act of the defendant as a separate cause of action and stated that although his acts committed within the period which resulted in damage to the plaintiff could be subject to suit, the statute of limitations could not be extended *to acts done beyond the three years.*"

This construction of our holding in *Crummer* is supported by the decisions in other circuits. See Hanover Shoe, Inc. v. United Shoe Machinery Corp., 3 Cir., 1967, 377 F.2d 776, 793–795, and see Hoffman v. Halden, 9 Cir., 1959, 268 F.2d 280, 302–303.

▮▮▮▮ We conclude, therefore, that the trial court erred in dismissing the complaint by reason of the allegation that the first overt act occurred in 1961 and would thus be time-barred if the Florida statute of limitations is applied without any tolling, which point we have discussed above. It, therefore, becomes necessary for us to remand the case to the trial court for it to consider whether the statute of limitations, applied according to the tolling standard we have set out, laches barred any recovery based on the first overt act as charged, and, if it did, then to reinstate the case for further proceedings in light of our decision that the conspiracy charge is still viable as to the overt acts alleged to have occurred in 1965 and 1967.

The judgment is, therefore, reversed and the case is remanded for further proceedings not inconsistent with this opinion.

Except as indicated by the filing of this corrected opinion, the petition for rehearing is denied.

COLEMAN, Circuit Judge (dissenting).

I respectfully dissent.

Dr. Mizell lost his surgical privileges because it was found that three of every four appendectomies performed by him had been unnecessary. In suits brought by the doctor, the Florida courts adjudged that this finding was grounded

on due process and supported by substantial evidence. Dr. Mizell is bound by this, even in the Federal Courts. See Brown v. Chastain, 5 Cir., 1969, 416 F.2d 1012; Paul [Feder] v. Dade County, Florida, 5 Cir. [November 26, 1969] 419 F.2d 10; Granader v. Public Bank, 6 Cir., 1969, 417 F.2d 75, 82.

In Count II of the complaint Dr. Mizell sued the hospital district, two of its board members, and fourteen doctors for damages, actual and punitive, totalling $17,600,000. In my opinion the Federal Courts do not have jurisdiction of this damage count. See Eisen v. Eastman [2 Cir., November 28, 1969] 421 F.2d 560.

This case strikes me as being a pitiably poor vehicle upon which to inaugurate a judge-made rule that a plaintiff seeking asserted civil rights remedies may relitigate a substantially similar claim under the guise that it is a different cause of action.

In reality, as I view it, Burnett v. New York Central Railroad and Berry v. Pacific Sportfishing, Inc., cited in the majority opinion, are not authority for the action espoused by the majority. These cases involved federal causes of action with built in statutes of limitation. Without a liberal tolling rule the plaintiffs in those cases would have suffered dismissals, not on the merits but on technicalities. In *Burnett*, the Court held that the three year FELA limitation is tolled during the pendency of a timely state court suit dismissed for improper venue. *Berry* involved the Death on the High Seas Act, i. e. beyond state court jurisdiction. Dr. Mizell chose his forum and litigated to the last ditch. Losing in the state courts he is now permitted to start over. Federalism where art thou?

It is well settled that actions under Federal Civil Rights laws are governed by state statutes of limitations. This rule is now abrogated by judicial decree. With deference, I cannot concur in either the result or the reasoning by which it is reached.

PER CURIAM:

A member of the Court, Judge Coleman, requested a poll of the Court on the matter of granting a hearing en banc in this case. With one vacancy on the Court, the result was 7 Judges in favor of an en banc hearing and 7 opposed.

A majority of the Circuit Judges who are in regular active service not having voted in favor of it, (Title 28, U.S.C., Section 46(c); Rule 35(a), Federal Rules of Appellate Procedure; Fifth Circuit Rule 12) the petition for rehearing en banc is denied.

On the petition for rehearing before the panel the petition for rehearing is denied, COLEMAN, Circuit Judge, dissenting.

Petition for rehearing and for rehearing en banc

Denied.