Dorothy G. **AMMLUNG,** Administratrix of the Estate of **Russell G. Ammlung, Jr.,** Deceased

v.

**CITY OF CHESTER** et al.

Civ. A. No. 72–868.

United States District Court, E. D. Pennsylvania.

March 14, 1973.

Michael T. McDonnell, Jr., Yeadon, Pa., for plaintiff.

Arthur Levy, Chester, Pa., for defendants.

## OPINION

TROUTMAN, District Judge.

In this civil rights action, we are concerned with the incidents and circumstances surrounding the death of Russell Ammlung on January 24, 1970. The facts, as alleged in the complaint filed by Dorothy Ammlung as administratrix of her son's estate, are as follows: On the night of January 23, 1970, the decedent, [Rusty], age eighteen, attended a dance in the gymnasium of St. James High School in Chester, Pennsylvania. After removing his coat, Rusty was also required to remove his shoes in order to preserve the gymnasium floor. While he was attending the dance, Rusty became ill and attempted to retrieve his coat from the cloakroom. As he was proceeding down the hall, Rusty was observed by a chaperone who summoned defendant Platt, a Chester police officer on extra duty. Platt confronted Rusty, sitting on the stairs, and asked him where his shoes were. Because of his illness, Rusty was unable to respond to the officer's question. Thereupon, Officer Platt arrested Rusty without a warrant and charged with with "underage drinking", allegedly on the basis that he had the odor of liquor on his breath.

Defendants Friel and Brown, who were also Chester police officers, responded to Platt's call and took Rusty into custody. At this time, Rusty was removed from the school without his coat or shoes, placed in a police car while in an "uncomprehending state" and driven to the city jail.

Upon his arrival at the Chester jail, Rusty was placed on the floor of a cell in an "uncomprehending, totally helpless position". The officers did not advise Rusty of his rights nor did they call his parents or seek medical assistance for him. At this point, defendants Dixon and Sergeant Morgan turned Rusty over on his side, thus becoming aware of his condition. Later in the night, Dixon, Morgan, and Magistrate Lawrence, also a defendant, poured some water over Rusty in an attempt to prepare him for

arraignment. At this point, Captain Welc is alleged to have become aware of Rusty's condition.

At approximately 10 A.M. the following morning, a rattle was heard in the boy's throat, and the rescue squad was summoned to transport him to Chester Crozier Medical Center, where he was pronounced dead on arrival. An autopsy revealed that there was no alcohol in his blood and that the cause of death was due to the aspiration of his own vomit.

As a result of her son's death, plaintiff filed two suits in the Court of Common Pleas of Delaware County. The first suit was filed against the City of Chester, Magistrate Lawrence, Captain Welc, Sergeant Morgan, Roy Dixon, and Officers Platt, Friel and Brown. On August 16, 1971, the Court sustained defendants' preliminary objections on state immunity grounds, but granted plaintiff leave to file an amended complaint. On August 28, 1972, the state court sustained defendants' preliminary objections to the amended complaint and from this decision, plaintiff has appealed. At this time, her appeal is still pending before the Superior Court of Pennsylvania, a motion to quash the appeal being denied on December 6, 1972. The second state action was filed against the Mayor of Chester and the Chief of Police. On August 16, 1971, the Court again sustained defendants' preliminary objections on state immunity grounds, but granted plaintiff leave to file an amended complaint. On February 3, 1972, the Court issued an order entering judgment in favor of defendants because of plaintiff's failure to file an amended complaint. No appeal from the dismissal was taken. In both prior state court suits, defendants' liability was based on state law, and, as far as can be discerned, no civil rights claim was made.

On May 2, 1972, plaintiff filed a civil rights action in this Court, brought under 42 U.S.C. §§ 1983, 1985 and 1988, seeking damages and injunctive relief. As defendants, plaintiff named the following individuals: Officers Platt, Friel and Brown, Captain Welc, Sergeant Morgan, Magistrate Lawrence, Roy Dixon, Chief of Police Bail, and Mayor Nacrelli. Construing her complaint broadly, plaintiff alleges that the following acts committed by the various defendants amounted to deprivations of Rusty's civil rights:

1. Illegal arrest [Officer Platt]

2. False imprisonment [Officers Platt, Friel and Brown, Captain Welc, Sergeant Morgan, Magistrate Lawrence and Roy Dixon]

3. Illegal search and seizure [Officers Platt, Friel and Brown]

4. Assault and battery [Officers Friel and Brown; also by Sergeant Morgan, Magistrate Lawrence and Roy Dixon]

5. Criminal negligence [by defendants Platt, Friel, Brown, Morgan, Welc, and Dixon in failing to provide adequate medical care]

6. Cruel and unusual punishment

7. Due process violations, i. e., failure to advise decedent of his constitutional rights.

In addition, plaintiff reasserts her wrongful death and survival actions as pendent claims.

Presently before the Court is defendants' motion to dismiss the complaint for failure to state a cause of action. For the purpose of a motion to dismiss, the material allegations of the complaint are taken as admitted. *See e. g.* Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172, 174–175, 86 S.Ct. 347, 15 L. Ed.2d 247 (1965). In addition, the complaint is to be liberally construed in favor of the plaintiff. See F.R.Civ.P. 8(f); Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The complaint should not be dismissed unless it appears that plaintiff could prove "no set of facts in support of his claim which would entitle him to relief". Conley v. Gibson, *supra,* at 45–46, 78 S.Ct. at 102. *See also* Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.

Ed.2d 404 (1969). Thus, although plaintiff's complaint has been drafted by her attorney, the standard is substantially similar to that set forth for *pro se* litigants in civil rights cases. *Compare* Haines v. Kerner, 404 U.S. 519, 520–521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1973). In support of their motion, defendants raise the following defenses: immunity from the civil rights acts, the statute of limitations and res judicata.

### I.

■ Initially, plaintiff alleges in her complaint that this action is brought under 42 U.S.C. § 1988.[1] Thus, to the extent plaintiff relies on Section 1988 as creating a cause of action, we must analyze the significance of this provision. Section 1988 provides in essence that in a civil rights action, the governing law is to be the law of the United States. Where there are no applicable federal laws, the common law and laws of the state shall govern, as long as they are not inconsistent with the Constitution and laws of the United States. Thus, Section 1988 authorizes, in civil rights cases, resort to remedies and procedures of the state and the common law where those of federal law are inadequate. It does not create an independent cause of action. Post v. Payton, 323 F.Supp. 799, 802–803 (E.D.N.Y.1971)

### II.

■ Secondly, plaintiff alleges in her complaint that this action is also brought under 42 U.S.C. § 1985. Although plaintiff does not specify on which subsection of Section 1985 she relies, it is clear from a reading of this statute that the only provision of any possible applicability is Section 1985 (3).[2] Section 1985(3) provides, in essence, a cause of action for a conspiracy

---

1. 42 U.S.C. § 1988 provides:

 "Proceedings in vindication of civil rights

 "The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty."

2. 42 U.S.C. § 1985(3) provides:

 "Depriving persons of rights or privileges

 "(3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

to deprive any person of the equal protection of the law. Unlike its counterpart 42 U.S.C. § 1983, there is no requirement that the deprivation of rights must occur under color of state law. Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). In her complaint, plaintiff makes no allegation of any conspiracy nor does she allege any equal protection violation. Even assuming that a conspiracy could be inferred from the interaction of the police in this case, this would still be insufficient to state a Section 1985(3) cause of action for an allegation that the purpose of the conspiracy was to deprive Rusty of equal protection of the law is required. Thus, upon a finding that none of the requisite elements of a Section 1985(3) cause of action has been pleaded and that none of these elements could be reasonably inferred, we must grant defendants' motion to dismiss the Section 1985(3) claim.

### III.

The provision of the Civil Rights Acts with which we are primarily concerned in this case is 42 U.S.C. § 1983.[3] Section 1983 provides a civil cause of action for any deprivation of rights, privileges or immunities secured by the Constitution or laws of the United States done under color of state law. The main trust of plaintiff's complaint falls within the purview of this provision, and it is toward these allegations that defendants concentrate their motion to dismiss. Defendants have asserted as grounds for their motion defenses applicable to the various individual defendants and the defenses of res judicata and the statute of limitations, which would be dispositive of the entire action. It is to these considerations that our attention must now turn.

### A.

■ Initially, defendant contends the City of Chester is immune from suit. While it is true that a city is not a "person" subject to suit under the Civil Rights Act, Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); United States ex rel. Gittlemacker v. County of Philadelphia, 413 F.2d 84, (3rd Cir. 1969) cert. denied 396 U.S. 1046, 90 S.Ct. 696, 24 L.Ed.2d 691 (1970); United States ex rel. Krenkowitz v. Cavanaugh, 337 F.Supp. 68 (E.D. Pa.1972); Ransom v. City of Philadelphia, 311 F.Supp. 973 (E.D.Pa.1970), there is authority that under Section 1983, injunctive relief may be granted against a city. See e. g. Garren v. City of Winston-Salem, 439 F.2d 140 (4th Cir. 1971). In this case, plaintiff seeks a permanent injunction against the continued use of such allegedly illegal practices. Plaintiff has not, however, undertaken to file a class action. Since the principal purpose of this suit is to recover money damages for the death of Rusty and since there is no class action alleged, injunctive relief would be particularly inappropriate in this case. Because this case is ill-suited for injunctive relief, the general rule as set forth in Monroe v. Pape, supra, is applicable and, thus, the City of Chester is immune from suit under the Civil Rights Act. Accordingly, defendants' motion to dismiss as to the City of Chester will be granted.

### B.

■ Secondly, defendants move to dismiss as to Mayor Nacrelli and Chief of Police Bail. In this vein, it is significant to note that there is no allegation in the complaint that either defendant participated in, ordered, or, in fact, had any knowledge of the alleged illegal

3. 42 U.S.C. § 1983 provides:
 "Civil action for deprivation of rights
 "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

treatment of Rusty. In a cause of action for a deprivation of civil rights, it is necessary to allege that the defendant participated in or was present during the alleged civil rights violation. Hamilton v. Dalton, 334 F.Supp. 794 (E.D. Pa.1971); Patrum v. Martin, 292 F. Supp. 370 (W.D.Ky.1968). Moreover, under the Civil Rights Act, the principle of respondeat superior is inapplicable. Barrows v. Faulkner, 327 F.Supp. 1190 (D.Okl.1971); Hill v. Toll, 320 F.Supp. 185 (E.D.Pa.1970); Salazar v. Dowd, 256 F.Supp. 220 (D.Colo.1966). Thus, upon a finding that there is no basis for liability as to Mayor Nacrelli and Chief Bail, defendants' motion to dismiss as to these two defendants will be granted.

### C.

Thirdly, defendants move to dismiss the complaint as to Magistrate Lawrence on the ground of judicial immunity. It is well established that a judicial or quasi-judicial officer is immune from civil rights liability for actions taken under the authority of his office. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Pennebaker v. Chamber, 437 F.2d 66 (3rd Cir. 1970); Winterhalter v. Three Rivers Motor Co., 312 F.Supp. 962 (W.D.Pa. 1970); Danner v. Moore, 306 F.Supp. 433 (W.D.Pa.1969); Mann v. Snyder, 300 F.Supp. 1309 (E.D.Pa.1969). In her complaint, plaintiff alleges that Lawrence took part in the mistreatment of the decedent in two ways: (1) by failing to hold a hearing, and (2) by participating in the incident where water was thrown on the decedent in order to revive him. In failing to hold a hearing for an "uncomprehending" prisoner, we can perceive no deviation from the authority of the Magistrate's office as

to warrant civil rights act liability. Although we would dismiss as to the above ground, the Magistrate's alleged participation in the water incident calls for the development of further facts. Accordingly, the motion to dismiss on this ground as to Magistrate Lawrence will be denied at this time.[4]

### D.

Defendants next move to dismiss the complaint as to defendants Friel, Brown, Sergeant Morgan, Captain Welc and Roy Dixon.[5] The basis of defendants' motion is that the only allegations of any colorable merit in the complaint as to these defendants are those charging them with false imprisonment and with improper and negligent medical treatment. Defendants argue that these actions amount to mere torts and a mere tort is insufficient to give rise to a civil rights cause of action.

Again, it is well settled that a mere tort, without more, committed by a state official acting under color of law, is insufficient to show a deprivation of rights under the Civil Rights Act. United States ex rel. Gittlemacker v. County of Philadelphia, *supra*; Gittlemacker v. Prasse, 428 F.2d 1 (3rd Cir. 1970). Recovery under the Civil Rights Act can be had only where the conduct involved amounted to either deprivation of life or liberty without due process of law or cruel and unusual punishment. *See e. g.*, Howell v. Cataldi, 464 F.2d 272 (3rd Cir. 1972). Similarly, a claim of improper medical treatment without more does not constitute a denial of rights secured by the Constitution. Kontos v. Prasse, 444 F.2d 166 (3rd Cir. 1971); Gittlemacker v. Prasse, *supra*; Commonwealth of Pennsylvania ex rel. Gatewood v. Hendrick, 368 F.2d 179

---

4. It should be noted that in the state court action, plaintiff conceded there was no basis to hold Magistrate Lawrence liable. See opinion of DeFuria, J. of August 16, 1971, sustaining defendants' preliminary objections.

5. It is difficult to determine from the complaint whether it is alleged that Roy Dixon was acting under color of state law or, in fact, under what capacity he is alleged to have acted. Plaintiff's complaint is not a model of precision and clarity. We will assume, however, for the purpose of this motion that Dixon was acting under color of state law.

(3rd Cir. 1966). Again, it is only where the improper medical treatment is tantamount to cruel and unusual punishment that it becomes actionable. Although plaintiff's complaint is not well pleaded in this respect, frequent references are made to the "barbaric" treatment accorded Rusty prior to and during his incarceration. We are unable to say at this point to a certainty that plaintiff has set forth no facts which would entitle her to relief. Accordingly, defendants' motion to dismiss the complaint on this ground must at this time be denied.

### E.

 Finally, Officer Platt moves to dismiss the complaint as it is applicable to him on the ground that he acted in good faith and with probable cause in arresting Rusty. While it is true that "good faith and probable cause" constitute a defense to a police officer's civil rights liability, Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), this standard should be applied after the facts of the case are developed, rather than on a preliminary motion to dismiss. Accordingly, Officer Platt's motion to dismiss on this ground will at this time be denied.

### F.

 Plaintiff has also asserted as pendent claims causes of action under the Pennsylvania Wrongful Death and Survival Acts. As previously mentioned, plaintiff had filed two prior state court suits involving the identical facts and seeking substantially the same relief. In the state actions based on these same statutes, the Court sustained defendants' preliminary objections, all of which asserted common law defenses. Since under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), we would be required to apply Pennsylvania law, we see no necessity to duplicate the effort spent by the state court in determining this matter. Moreover, except in certain statutory situations, the federal courts are not a forum for a plaintiff to collaterally attack state court determinations. Thus, to the extent United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) permits a federal court discretion in determining whether to hear pendent state claims, we decline to do so. Accordingly, we will grant defendants' motion to dismiss the pendent claims.[6]

### G.

Defendants' next argument is that this action is barred by the applicable Pennsylvania statute of limitations.[7] Since there is no federal statute of limitations governing civil rights claims brought under Section 1983, the federal courts have consistently applied the relevant state statute of limitations. O'Sullivan v. Felix, 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980 (1914); Hileman v. Knable, 391 F.2d 596 (3rd Cir. 1968); Henig v. Odorioso, 385 F.2d 491 (3rd Cir. 1967), cert. denied 390 U.S. 1016, 88 S.Ct. 1269, 20 L.Ed.2d 166, rehearing denied 391 U.S. 929, 88 S.Ct. 1814, 20 L.Ed.2d 671 (1968); Cheeks v. City and County of Philadelphia, 329 F.Supp. 404 (E.D.Pa.1971); Fitzgerald v. Appolonia, 323 F.Supp. 1269 (E.D.Pa.1971); Funk v. Cable, 251 F.Supp. 598 (M.D.Pa. 1966); Conard v. Stitzel, 225 F.Supp. 244 (E.D.Pa.1963). Both plaintiff and

---

6. It is at this point that defendants' res judicata defense becomes relevant. However, since we consider the action barred by the statute of limitations, we do not reach that issue.

7. Since there is no Pennsylvania statute of limitations of general applicability to actions to vindicate invasions of constitutional rights, determination of the applicable statute of limitations must be made from the nature of the conduct complained of. Conard v. Stitzel, 225 F.Supp. 244, 247 (E.D.Pa.1963). In this case, the relevant state statutes of limitations are as follows:

 12 P.S. 1603 (Wrongful Death, limitation period of one year after death)
 12 P.S. 31 (Trespass Action, two-year limitation period)
 12 P.S. 51 (False Arrest, one-year limitation period)

defendants agree that the state statutes of limitations are applicable and that the time limitation on all applicable statutes has run.[8] Plaintiff argues, however, that the pendency of the prior state actions tolled the statute of limitations. Thus, the issue presently before the Court is whether the pendency of prior state actions tolls the statute of limitations, thus permitting a subsequent federal civil rights suit on the same facts and subject-matter after the statute ordinarily would have run.

The basic question in determining whether, under a given set of facts, a statute of limitations is tolled is one of legislative intent. Burnett v. New York Central R. Co., 380 U.S. 424, 426, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965). Since 1830, the Supreme Court has held that state statutes of limitations govern the timeliness of federal causes of action unless Congress has specifically provided otherwise. McCluny v. Silliman, 28 U.S. (3 Pet.) 270, 277, 7 L.Ed. 676 (1830). Presumably aware of this rule, Congress, in 1871, enacted Section 1983 without authorizing a specific limitation period. Thereafter, the Court reexamined and reaffirmed this rule in Campbell v. Haverhill, 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280 (1895) and since that time, state statutes have uniformly controlled as periods of limitations where Congress has been silent on the question. See Auto Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 701–704, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). Although Congress has enacted federal periods of limitation where it has disagreed with such an interpretation of its silence,[9] it has chosen not to do so in civil rights cases. In fact, a provision of the 1866 Civil Rights Act, now 42 U.S.C. § 1988, expressly provides that to the extent federal laws governing civil rights actions are silent, the common

law, as modified by state statutes, shall be applicable, provided it is not inconsistent with the Constitution and laws of the United States. Thus, it may be reasonably inferred from Congress's failure to act that it has been and is satisfied in having state limitation statutes govern federal civil rights claims. There is little indication in the statutory framework or its legislative history, however, to indicate whether this wholesale incorporation of state limitation periods into the civil rights acts was intended to also include state tolling provisions.

Plaintiff relies squarely on Mizell v. North Broward Hospital District, 427 F.2d 468 (5th Cir. 1970) for the proposition that although a federal court applies a state statute of limitations, it has the duty to fashion a federal rule as to tolling. In *Mizell,* plaintiff, a surgeon, had his surgical privileges suspended by defendant hospital. Plaintiff invoked prescribed state administrative remedies without success, followed by an appeal to the state courts. Thereafter, plaintiff filed a civil rights action in federal court. The district court dismissed the complaint, holding that the action was barred by the applicable statute of limitations. On appeal, plaintiff argued that the statute of limitations was tolled by his administrative efforts and his litigation in state court. In adopting plaintiff's argument, the Court of Appeals stated:

"Having in mind the salutary rule that under our system of federalism aggrieved persons should be encouraged to utilize state procedures before appealing to the federal courts [citation omitted], we are persuaded that in cases arising under the constitution or laws of the United States, a federal rule on tolling a state statute of limitations (when applicable) should be observed, if such rule clearly carries

8. All of the incidents of which plaintiff complains occurred on January 23, 1970. The present action was not filed until May 2, 1972, which is beyond the limits prescribed by both the two-year and one-year statutes. *See* note 7, *supra.*

9. Congress has subsequently enacted limitation periods for antitrust, 15 U.S.C. § 15b [Clayton Act] and patent cases. 35 U.S.C. § 286.

out the intent of Congress or the constitutional principle at stake." 427 F.2d at 474.

Thus, the Court of Appeals remanded the case for the trial court to consider a federal standard of tolling. In so holding, the Court relied heavily on Burnett v. New York Central R. Co., 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965).

In *Burnett*, plaintiff filed an action under the Federal Employees' Liability Act [FELA], 45 U.S.C. § 51 *et seq.* in a state court. The state court dismissed the action because of improper venue, and plaintiff, thereafter, filed an identical action in federal court. By the time the federal action had been filed, the applicable federal statute of limitations, 45 U.S.C. § 56, had run, and the District Court dismissed the action on the ground that it was barred by the statute. On appeal, the Supreme Court reversed, holding:

> "When a plaintiff begins a timely FELA action in a state court of competent jurisdiction, service of process is made upon the opposing party, and the state court action is later dismissed because of improper venue, the FELA limitation is tolled during the pending of the state action." 380 U.S. at 428, 85 S.Ct. at 1054.

The language of the Court throughout the opinion indicates that its holding is narrowly limited to the facts and the statute before it because to hold otherwise would have fostered lack of uniformity in the administration of a remedial federal statute. The Court's reasoning in adopting this rule rather than adopting state savings statute was that only a federal rule can achieve nationwide uniformity in FELA cases. "Uniformity" is repeated throughout the opinion indicating its limited application to assure uniformity in the application of a federal limitations statute.

Virtually nowhere else in the realm of federal law is nationwide uniformity required as in labor law. Teamsters Local v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct.

571, 7 L.Ed.2d 593 (1962). In addition, labor actions upon collective bargaining contracts require the greatest amount of judicial innovation and inventiveness. *See* Textile Workers v. Lincoln Mills, 353 U.S. 448, 456, 77 S.Ct. 912, 1 L.Ed. 2d 972 (1957). Yet, when confronted with the identical argument raised in *Burnett* in the context of a labor case, the Supreme Court, in the absence of a *federal* limitations statute, rejected the *Burnett* approach in favor of applying the *state* tolling provisions. Auto Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). In *Hoosier*, petitioner union filed suit in state court to recover accumulated vacation pay under the terms of a collective bargaining agreement. The state court dismissed, and the union, thereafter, brought an action in federal court under Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. The trial court dismissed the action on the ground that it was barred by the applicable state statute of limitations and the Supreme Court affirmed. In affirming the decision of the trial court, the Supreme Court rejected the Union's contention that the Court should fashion a uniform federal limitation period, holding:

> " * * * [S]ince no federal provision governs, we hold that the timeliness of a § 301 suit, such as the present one, is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations." 383 U.S. at 704–705, 86 S.Ct. at 1113.

The Union also argued that the prior state actions tolled the statute of limitations, relying on Burnett v. New York Central R. Co., *supra*. Although *Burnett* was decided in the preceding term, the Court found it was inapposite to the *Hoosier* case in that its primary underpinning was lacking; i. e., the necessity of a national policy of a uniform time bar clearly expressed by Congress in enacting the FELA limitations provision. Section 301, the Court held, establishes

no such policy of uniformity expressed in a national limitations provision.

Section 1983 of this Civil Rights Act, like Section 301 of the Labor-Management Relations Act, contains no national limitations provision and, therefore, no national policy of uniformity. Some courts, including the *Mizell* court, have read *Burnett* as having implications beyond the narrow scope of the case before it.[10] From the language of the *Burnett* court itself and from the subsequent decision in *Hoosier*, we are compelled to read the *Burnett* holding to be confined to the application of federal limitations statutes and to the facts of that case. Moreover, in the absence of a federal statute of limitations, we find *Hoosier* rather than *Burnett* to be the controlling law with respect to tolling. Thus, to the extent that *Mizell* relies on *Burnett*, we decline to follow it on the ground that its holding makes no reference to and is substantially undermined by *Hoosier*.

We do not, however, reject the *Mizell* holding under the peculiar facts of that case. In *Mizell*, plaintiff pursued a scheme of administrative remedies established for the purpose of reviewing the Board's action. In this context, the Court stated:

> "Much can be said in favor of the court's adoption of a rule with respect to 'tolling' that would further the policy of permitting state resolution of *problems of this nature* [pursuing administrative review] or *pursuing of grievance procedures* as authorized *in bargaining contracts with employees*." 427 F.2d at 473–474. (Emphasis ours.)

Where established grievance or arbitration procedures are provided with review to state courts, it is clearly conceivable that such procedures could not be pursued to finality without risking the bar of the statute of limitations. Such resort to established state procedures should be encouraged to the fullest extent. So limited to the above situations, *Mizell* is a sound decision. Under the facts of the instant case, however, these considerations are not present and we do not view *Mizell* as mandating a federally-fashioned rule as to tolling.

Moreover, the courts of this circuit have repeatedly looked to state law to determine whether the applicable state statute of limitations was tolled in a civil rights action. Hughes v. Smith, 264 F.Supp. 767 (D.N.J.1967), aff'd. 389 F. 2d 42 (3rd Cir. 1968); Conard v. Stitzel, 225 F.Supp. 244 (E.D.Pa.1963). In both *Hughes* and *Conard*, state prisoners filed civil rights actions after the applicable statute of limitations had run, and the issue in both cases was whether the plaintiff's imprisonment during all or part of the two-year period immediately preceding the filing of the complaint tolled the statute of limitations. Both courts looked to the state tolling statutes to determine the question whether imprisonment tolled the statute. In each case, the Court found that there was no applicable provision which provided that imprisonment tolled the statute and, thereby, dismissed the actions as barred by the statute of limitations. In *Conard*, Judge Freedman stated:

> "We deal here with a federal cause of action. [42 U.S.C. § 1983] There is no general statute of limitations, and Congress has not specified a limitation period for this specific cause of action. In such circumstances it has been long the general practice of the federal courts to apply the relevant state statute of limitations. The application of state statutes of limitations to federal causes of action is not ordinarily inconsistent with federal policy. Indeed, the failure of Congress to designate a limitation period may be said to indicate a congressional intention that the state period should apply." 225 F.Supp. at 246.

The Court next determined that 12 P.S. § 34 was the applicable state statute of limitations and then sought to determine whether there was a tolling provision

10. See Mizell v. North Broward Hospital District, *supra*, 427 F.2d at 474.

for imprisonment. Finding none, the Court concluded:

"It follows, therefore, that the plaintiff's imprisonment during all or part of the two-year period immediately preceding the filing of his complaint did not toll the running of the applicable Pennsylvania statute of limitations." 225 F.Supp. at 248.

Thereafter, the Court determined that the intention of Congress was not defeated by its holding, since the state statute in no way discriminated against federal rights and since there is no need for uniformity as exists in areas such as federal labor law. Thus, the law in this Circuit is that state law governs the question whether a state statute of limitations is tolled in a civil rights action.

We now focus our attention on Pennsylvania law to determine whether a prior state proceeding based on the same facts and involving the same subject-matter tolls the statute of limitations. We have reviewed the applicable Pennsylvania statutes and cases cited by the parties [11] and have found nothing to indicate that a prior action tolls the statute. Ordinarily, the absence of such a tolling provision would end the case here, but both parties have found it necessary to analogize to other areas of laws. The most relevant analogy is that made by defendant to the Pennsylvania rule which precludes a plaintiff from amending his complaint after the statute of limitations has run where the amendment pleads a new and different cause of action. *See* Wilson v. Howard John-son Restaurant, 421 Pa. 455, 219 A.2d 676 (1966); Saracina v. Cotoia, 417 Pa. 80, 208 A.2d 764 (1965); Schaffer v. Larzelere, 410 Pa. 402, 189 A.2d 267 (1963). Although these cases are not directly on point, they shed light on the approach which Pennsylvania state courts would follow in dealing with this question.

 We conclude that state tolling provisions govern the tolling of the state statute of limitations in federal civil rights claims, and in the absence of an applicable Pennsylvania tolling provision, we further conclude that this action is barred by the statute of limitations. In so holding, we are not unaware that we choose between two separate and distinct considerations: on one hand is the suggestion, thus far applied to grievance and administrative review procedures, that plaintiffs in civil rights actions be encouraged to utilize state procedures prior to resorting to the federal courts [12] and on the other hand, the well established policy underlying the statute of limitations. We do not, however, find plaintiff's authorities applicable or persuasive and we find the law of this Circuit to the contrary. In any event, we consider this case, where the plaintiff, under the guise of a new cause of action, is seeking to relitigate essentially the same claims which were unsuccessfully pursued in the state court, a particularly poor vehicle for the establishment of the judicial innovation urged upon us by the plaintiff. Accordingly, defendants' motion to dismiss the complaint will be granted.

---

11. Plaintiff cites and relies upon broad and general language found in 22 P.L.E. Limitation of Action § 89, pp. 493–494 for the proposition that where plaintiff has a pending case it tolls the statute of limitations, which does not run until final adjudication of the pending case. We have reviewed the cases upon which such generalization is based and do not find them supportive. On the other hand, defendant relies on First National Bank of Ashley v. Reily, 165 Pa.Super. 168, 67 A.2d 679 (1949) and we do not find this case supportive.

12. In this vein, it should be noted that the federal remedy for the vindication of civil rights deprivations is supplemental to the state remedy, both federal and state courts having concurrent jurisdiction over civil rights claims. Thus, the usual rule that state remedies must be pursued and exhausted prior to invoking federal jurisdiction is inapplicable. Monroe v. Pape, *supra*, 365 U.S. at 183, 81 S.Ct. 473, 5 L. Ed.2d 492; McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L. Ed.2d 622 (1963).

## H.

In holding that this action is barred by the statute of limitations, we neither reach nor decide defendants' further contention that the action is barred by res judicata.