THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* STANLEY KOUTNIK, EDWARD CONLON, FRANCIS DOLAN, JOHN J. SMITH, WALTER TELEKY, LOUIS MARANGELLO, GEORGE TRIEF, JAMES CONWAY, CHARLES SAWLING, JAMES T. STEVENS, PAUL MEDICA, LOUIS COSTELLO, EDWARD NIGRO, SEYMOUR FREEDMAN, LAWRENCE JESSUP, CHARLES LEIGH and LEONARD ALLEN, Appellants, et al., Defendants.

First Department, March 14, 1974.

*Victor J. Herwitz* for Charles Leigh and another, appellants.

*Richard Dienst* of counsel (*Schofield, Dienst & Allen,* attorneys), for Stanley Koutnik and others, appellants.

*Jonathan Lovett* of counsel (*Michael R. Juviler* with him on the brief; *Frank S. Hogan, District Attorney*), for respondent.

MURPHY, J.   Between October, 1960 and June, 1964, the New York County District Attorney's office actively and extensively investigated alleged police involvement in certain illicit gambling operations in New York City.   During the course of that investigation 107 wiretaps and eavesdropping orders were obtained for 39 different locations.   As a result of such electronic surveillance, plus observations made by the prosecutor's investigators, appellants were indicted in 1968.   The gravamen of the multi-count indictment is that, between June, 1962 and June, 1964, they conspired to solicit and receive unlawful fees for permitting illegal gambling operations to be conducted.

On September 28, 1970 appellants' motion to suppress all evidence adduced as a result of wiretaps was granted on the ground that they violated section 605 of the Federal Communications Act (U. S. Code, tit. 47, § 605) and were therefore inadmissible in this State court proceeding.   (*Lee* v. *Florida,* 392 U. S. 378; *Fuller* v. *Alaska,* 393 U. S. 80.)   We unanimously affirmed the suppression order.   (*People* v. *Trief,* 37 A D 2d 553.)   Some nine days later the Court of Appeals decided *People* v. *Feinlowitz* (29 N Y 2d 176) which, in effect, held that Congressional enactment of the Omnibus Crime Control and Safe Streets Act of 1968 (U. S. Code, tit. 18, § 2511 *et seq.*), substantially amending section 605, sanctioned the use of wiretaps authorized prior to its effective date, provided there was substantial compliance with the newly enacted provisions.   The majority of the court in *Feinlowitz* then held that substantial compliance was shown in that case since the single wiretap was judicially supervised, section 813-a of the Code of Criminal Procedure had been fully complied with and probable cause for the challenged seizure clearly indicated.   We thereupon granted the People's motion for reargument and, upon reargument, vacated our prior order of affirmance, reversed the order of suppression and

remanded the case to " pass upon the validity of the specific wiretap orders in question, taking into account the affidavits upon which they were based and the procedure followed in obtaining them ". (*People* v. *Trief*, 37 A D 2d 771.)

A hearing pursuant to our direction was then held. The Trial Judge examined each of the 107 orders and underlying supporting affidavits and concluded that since the applicant and issuing Judge in almost every case were the same, the Justice granting the orders was sufficiently familiar with the over-all history and progress of the investigation to satisfy the recently enunciated Congressional policy of allowing " courtroom use of judicially supervised and controlled wiretaps ". (*People* v. *Feinlowitz, supra,* p. 185.)

Following the denial of the motion to suppress the evidence derived from the execution of the 107 orders, all appellants except Leigh and Allen pleaded guilty to the first count of the indictment, charging conspiracy to commit the crime of taking unlawful fees, in satisfaction of all charges, and were fined, sentenced to the New York City Penitentiary for terms not exceeding nine months, or given suspended sentences. Execution of all prison terms has been stayed pending this appeal. Appellants Leigh and Allen were convicted of the same charge after a nonjury trial and received suspended six-month terms of imprisonment and $250 fines or six months' imprisonment. The fines were paid.

Pursuant to agreement, Leigh and Allen were tried on a stipulated trial record consisting, *inter alia,* of the transcript of their police departmental trial and exhibits introduced thereat (which resulted in their dismissal from the police service for misconduct). Among the evidence included in said stipulation (subject to a continuing objection to their admissibility) were certain tape recorded conversations; excerpts from appellants' memorandum books; a certain collection of papers seized from an alleged gambler and coconspirator, Rocco Errichetti, referred to as the " Rock Papers "; and the testimony of a " stipulated expert " on gambling offenses who decoded the gambler's jargon used by the parties and cross-referenced the Rock Papers, the defendants' telephone conversations and their memo book entries for the trial court.

The principal evidence in the case against Leigh and Allen centered around the Rock Papers which were seized pursuant to a search warrant. These documents consisted, essentially, of instructions as to how to receive, record and relay information pertaining to " protected " gambling locations and

warnings of impending police action; and entries made pursuant to said instructions. Lieutenant Comperiati, the Police Department's "expert" in policy and gambling cases, though unable to identify the author of the Rock Papers and conceding that Leigh and Allen's names did not appear therein, by comparing taped telephone conversations between Leigh or Allen with Errichetti with material contained in their own memo books and entries in the Rock Papers, attempted to establish their involvement in the conspiracy.

The Rock Papers also contain notations indicating payments made by, or due from, the operators of gambling locations. But nothing contained therein indicates that appellants solicited or received any moneys for permitting gamblers or others to conduct their illegal operations in violation of law. Nor does any or all of the other evidence in the case sustain the charge of conspiracy to commit the crime of taking unlawful fees as there is no evidence at all in the record of an agreement to take money, a request for money, a conversation or discussion concerning the passing of money or the actual passing of money. This element of the crime has not been proven. However, even if we assume, *arguendo*, that the services rendered by these dismissed former policemen were not gratuitous, that their disclosed involvement in obtaining lists of protected locations from Errichetti and their disclosure to him of impending police action were sufficient to exclude every hypothesis other than their guilt of conspiring to receive unlawful fees for their corrupt work (*People* v. *Williams*, 41 A D 2d 711), and that the Rock Papers were properly connected with, and admitted against, Leigh and Allen (*People* v. *Wheatman*, 31 N Y 2d 12) —the crucial issue in all of these cases is the admissibility of the recorded conversations or, more succinctly, the sufficiency of the affidavits on which the eavesdropping orders were obtained. Without the evidence sought to be suppressed, it may be assumed that the prosecutor's cases against each appellant would be effectively destroyed. Indeed, the People so stated, as they were required to do, when prosecuting their appeal from the original order granting the suppression motion. (Code Crim. Pro., § 518-a.)

A complicating factor is that not all defendants have standing to attack all of the orders. For appellate purposes, the parties have entered into a stipulation identifying the particular defendants who may challenge specified orders and their supporting affidavit. In summary, all or some of the appellants have standing to challenge 42 orders and lack standing to chal-

lenge the remaining 65. As noted above, the trial court sustained the eavesdropping orders because the accumulation of facts justified a finding of probable cause for their issuance, despite the fact that the individual affidavits did not contain a sufficient degree of particularity and specificity to meet current requirements. We disagree.

The essential burden of the prosecutor's argument is that the affidavits which appellants lack standing to challenge were sufficient to apprise the single Justice who issued most of the eavesdropping orders of the progress of the investigation and contained enough factual background to support the affidavits underlying the orders which they may challenge.

Appellants Leigh and Allen concededly have standing to challenge the first wiretap order for intercepting telephonic communications of any of the named appellants or alleged conspirators. The main supporting affidavit (sworn to Nov. 17, 1960) states:

" This office is conducting an investigation to determine whether the crimes of conspiracy and violations of sections 1372 and 974(a) of the Penal Law, are being committed in New York County.

" Observations by police officers and investigators assigned to this investigation disclose that policy operations are being conducted in the Harlem area of New York County.

" This office has received confidential information to the effect that certain policy operators currently under observation by investigators have been paying police officers for ' protection ' from interference and arrest.

" The same source of information advises that a police officer assigned to the Chief Inspector's office, whose name sounds like ' Lee ' or ' Lehy ', had picked up ' protection ' money from policy operators. Later the informant was able to observe the license plate number of a car driven by this individual. Investigation discloses that the car is registered to Madeleine Leigh of * * *. Police Department records show that the said Madeleine Leigh is the wife of Charles A. Leigh, a police officer assigned to the Chief Inspector's office.

" Investigation further discloses that the telephone instrument bearing the special non-published number * * * is listed to Charles W. Leigh at * * *.

" In view of the foregoing, there is reasonable ground to believe that if the telephonic communications transmitted over the aforesaid telephone line and instrument are intercepted, evidence of crime may be obtained."

This affidavit was patently deficient and failed to meet even the stricken standards of section 813-a of the Code of Criminal Procedure. (*Berger* v. *New York*, 388 U. S. 41; *People* v. *McCall*, 17 N Y 2d 152.) Similarly, virtually all of the other supporting affidavits, including those which all defendants have standing to challenge, are largely conclusory in content and fail to reveal the sources of confidential information received or the reliability thereof. (*People* v. *McCall*, *supra*; *People* v. *Hendricks*, 25 N Y 2d 129; *Aguilar* v. *Texas*, 378 U. S. 108; *Spinelli* v. *United States*, 393 U. S. 410.) In our view the underlying affidavits upon which the seizure orders were granted fall far short of the test for admissibility enunciated in *Feinlowitz*. Moreover, though not all appellants may challenge all of the wiretap orders, and some may challenge none of them, each subsequent order is predicated on information obtained from previously authorized interceptions, and are so intertwined and interrelated as to cast a shadow upon the entire investigation. Thus, if we start with the first affidavit above quoted, supporting the wiretap order on Leigh's phone, and accept its legal insufficiency, we cannot reasonably conclude that its connection with the subsequent wiretap orders and the discovery of the challenged evidence had "become so attenuated as to dissipate the taint" (*Nardone* v. *United States*, 308 U. S. 338, 341); or that any lawfully obtained orders were not procured by exploitation of the first improperly granted order. (Cf. *Wong Sun* v. *United States*, 371 U. S. 471; *People* v. *Robinson*, 13 N Y 2d 296.) Accordingly, the suppression motions should have been granted.

Seven appellants were subpoenaed to testify before grand juries (other than the one that indicted them) and compelled to sign limited waivers of immunity under threat of job forfeiture. Relying on *Garrity* v. *New Jersey* (385 U. S. 493), they contend that their waivers of immunity were invalid and that, as a consequence of so testifying, they received transactional immunity. Their first contention is correct; the second is not. Since these appellants have stipulated that (a) no evidence (or fruits of any such evidence) obtained from said Grand Jury appearances was presented to the 1968 Grand Jury which indicted them and (b) the procedures set forth in section 2447 of the former Penal Law and its successor, section 619-c of the Code of Criminal Procedure, were not followed, they did not obtain complete immunity. (*People* v. *Laino*, 10 N Y 2d 161.)

Finally, appellants argue that they were denied a speedy trial. However, in light of our previous consideration of this question

on a related proceeding (*Matter of Leigh* v. *Murphy*, 37 A D 2d 117), the parties have stipulated to remove this issue upon this appeal and "preserve the point, should this matter be appealed to the Court of Appeals".

The order of Supreme Court, New York County (BIRNS, J.) entered on or about November 30, 1971, denying motions to suppress all wiretap and eavesdropping orders should be reversed, on the law, and said motions granted, the individual judgments of conviction thereafter rendered against the respective appellants reversed, on the law, and vacated, and the cases remanded to Supreme Court, New York County, for further proceedings consistent herewith.

Settle orders on notice.

KUPFERMAN, J. P., TILZER, CAPOZZOLI and LANE, JJ., concur.

Order of Supreme Court, New York County, entered on or about November 30, 1971, denying motions to suppress all wiretap and eavesdropping orders, unanimously reversed, on the law, and said motions granted, the individual judgments of conviction of said court thereafter rendered against the respective appellants (Stanley Koutnik—March 2, 1972; Edward Conlon—February 14, 1972; Francis Dolan—March 1, 1972; John J. Smith—January 8, 1973; Walter Teleky—March 16, 1972; Louis Marangello—March 6, 1972; George Trief—March 15, 1972; James Conway—April 4, 1972; Charles Sawling—April 4, 1972; James T. Stevens—February 9, 1972; Paul Medica—April 17, 1972; Louis Costello—March 6, 1972; Edward Nigro—March 20, 1972; Seymour Freedman—March 27, 1972; Lawrence Jessup—March 27, 1972; Charles Leigh—November 29, 1972; Leonard Allen—November 29, 1972) unanimously reversed, on the law, and vacated, and the cases remanded to the Supreme Court, New York County, for further proceedings consistent with the opinion of this court filed herein.

Settle orders on notice.