550 F.2d 726
 Walter J. MEYER, Plaintiff-Appellant,
v.
Louis J. FRANK, Commissioner of Police, Nassau County Police
Department, and Christopher Quinn, Trial
Commissioner and Inspector, Nassau
County Police Department,
Defendants-Appellees.
 No. 66, Docket 76-7172.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 22, 1976.
Decided Jan. 12, 1977.
 
 Ira Leitel, New York City (David B. Ampel, New York City, on the brief), for plaintiff-appellant.
 Joseph A. Demaro, Deputy County Atty. of Nassau County, Mineola, N. Y. (James M. Catterson, Jr., County Atty. of Nassau County, Natale C. Tedane, Senior Deputy County Atty., and Kenneth P. Morelli, Law Asst., Mineola, N. Y., on the brief), for defendants-appellees.
 Before SMITH, OAKES and TIMBERS, Circuit Judges.
 TIMBERS, Circuit Judge:
 
 
 1
 The question presented on this appeal is whether in a civil rights action under Sections 1983 and 1985 the applicable three year New York statute of limitations should be tolled during the period plaintiff pursued a remedy in the New York state courts. Under the circumstances of this case, we hold that it should not. Accordingly, we affirm the judgment of the district court which dismissed the complaint as time-barred.
 
 I.
 
 2
 Walter J. Meyer was a detective in the Nassau County Police Department (the Department). On June 25, 1970 a Nassau County grand jury indicted him and another detective for attempted first degree grand larceny. On January 1, 1972 a jury acquitted Meyer of this charge.
 
 
 3
 Before the criminal trial began, the Department conducted and concluded administrative proceedings to dismiss Meyer. On July 2, 1970, Meyer was charged with a violation of Department rules. The departmental charges were based on the same conduct charged in the indictment. A departmental trial initially was scheduled for November 30, 1970. Repeated adjournments, all except one due to the unavailability of Meyer's counsel, resulted in its postponement until April 22, 1971. On that date Meyer's counsel again was absent. His substitute counsel requested another adjournment. The trial commissioner, appellee Quinn, denied this request but informed Meyer that he could stand mute. On the advice of his substitute counsel, Meyer did remain mute while the Department presented its case. When the Department rested, Quinn adjourned the trial until April 27 and informed Meyer that he could present his case at that time. When the trial resumed on April 27, Meyer again stood mute. Quinn found him guilty. On June 4, 1971, he was dismissed from the Department.
 
 
 4
 Two months after his dismissal, Meyer commenced an Article 78 proceeding[1] in the Nassau County Supreme Court to review the action which resulted in his dismissal. His petition alleged various state law claims. It also alleged that the Department's action in trying him without the assistance of counsel of his choosing violated his federal constitutional rights to counsel and to confront witnesses. On July 15, 1971 the Article 78 petition was dismissed by Justice Pittoni of the Nassau County Supreme Court. The Appellate Division, Second Department, affirmed without opinion on October 10, 1972, 40 App.Div.2d 760, 336 N.Y.S.2d 239 (2nd Dept.1972) (mem.), and denied Meyer's motion for reargument on January 19, 1973. In July 1973 the New York Court of Appeals denied leave to appeal.[2]
 
 
 5
 On June 6, 1975 Meyer commenced the instant civil rights action in the Eastern District of New York.[3] His complaint alleged that his subjection to a departmental trial violated his Fifth Amendment privilege against self-incrimination and that his subsequent dismissal deprived him of the pursuit of his calling without due process of law. On March 12, 1976 Judge Costantino filed his opinion, 409 F.Supp. 1240, granting appellees' motion to dismiss the complaint as barred by the applicable three year New York statute of limitations. From the judgment entered the same day, this appeal was taken.
 
 II.
 
 6
 An action brought under the federal Civil Rights Act is subject to the statute of limitations the state courts would apply in an analogous state action. Accordingly, the three year New York statute of limitations[4] governs Meyer's instant § 1983 claim. Ortiz v. LaVallee, 442 F.2d 912 (2 Cir. 1971); Swan v. Board of Education, 319 F.2d 56 (2 Cir. 1963).[5] Since Meyer's self-incrimination and due process causes of action accrued no later than June 4, 1971, the date of his dismissal from the force, the instant civil rights action commenced four years later is time-barred unless a tolling principle applies so as to excuse the year's delay. Meyer urges us to create a toll for the period during which he pursued a remedy in the state courts. Specifically, he urges us to toll the twenty-three month period from August 1971 to July 1973 so as to render the instant civil rights action timely.
 
 
 7
 It is well settled that the federal courts have the power to toll statutes of limitations borrowed from state law in appropriate circumstances. Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 465 (1975); Holmberg v. Armbrecht, 327 U.S. 392, 395 (1946); Moviecolor Ltd. v. Eastman Kodak Co., 288 F.2d 80 (2 Cir.), cert. denied, 368 U.S. 821 (1961). We recently have affirmed the applicability of this principle in the context of a § 1983 cause of action. Kaiser v. Cahn, 510 F.2d 282, 286-87 (2 Cir. 1974).
 
 
 8
 Whether to toll in a particular case has been stated in terms of whether application of the borrowed state statute of limitations would frustrate the policy underlying the federal cause of action asserted. Johnson v. Railway Express Agency, Inc., supra, 421 U.S. at 465; Burnett v. New York Central R.R., 380 U.S. 424, 426-27 (1965). The inquiry pursued in the cases, however, is somewhat broader than this statement implies. In practice, resolution of the tolling question involves striking a balance between protection of the substantive federal policy under consideration on the one hand and protection of the policy behind the statute of limitations on the other hand. The plaintiff's conduct particularly his diligence in pressing his claim also is taken into account. Johnson v. Railway Express Agency, Inc., supra, 421 U.S. at 465-67; UAW v. Hoosier Cardinal Corp., 383 U.S. 696, 708 (1966); Burnett v. New York Central R.R., supra, 380 U.S. at 428; Blair v. Page Aircraft Maintenance, Inc., 467 F.2d 815 (5 Cir. 1972).
 
 
 9
 The remedial policy underlying § 1983,[6] considered alone, would not be impinged upon by applying the three year limitations period here. Since § 1983 plaintiffs are not required to exhaust state remedies, Monroe v. Pape, supra note 6, at 183, federal relief was available to Meyer all along. In consequence, the gravamen of his argument in support of a toll lies in federalism considerations of a general species. His theory is that the strong federal interest in redressing deprivations of constitutional rights manifested in § 1983 conflicts with a concomitant federal concern for encouraging the initial utilization of state agencies and courts for the vindication of wrongs committed by the state's agents. These can be accommodated, so the argument goes, only if a tolling principle assures the potential state court litigant of the residual availability of a § 1983 action. The Fifth Circuit adopted this reasoning in Mizell v. North Broward Hospital District, 427 F.2d 468 (5 Cir. 1970), and tolled the period during which a § 1983 plaintiff had challenged an administrative ruling within the agency and in the state courts.[7]
 
 
 10
 Meyer invites us to apply Mizell here. Assuming arguendo our agreement with the result reached there, the history of the instant litigation forecloses application here of the full force of the Fifth Circuit's reasoning. Meyer did not restrict his Article 78 petition to claims grounded in state law. Alleged violations of his Sixth Amendment rights to counsel and confrontation of witnesses were at the core of his petition. This is not a case like Mizell where the prior state court proceeding was directed at obtaining relief through an action grounded solely in state law.[8] Id. at 470-71, 474. The only thing Meyer has held in reserve has been the federal court itself; federal law has played a principal role all along. The result is that the policy of avoiding federal interference with state affairs survives here in a diluted posture.III.
 
 
 11
 We turn now from the federal policy consideration to the other relevant considerations, i. e. statute of limitations policy and Meyer's conduct of the litigation.
 
 
 12
 The policy of repose behind the statute of limitations protects defendants "by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." Order of Railroad Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 348-49 (1944). It also protects the courts by relieving "the burden of trying stale claims when a plaintiff has slept on his rights." Burnett v. New York Central R.R., supra, 380 U.S. at 428. Meyer's conduct is the sort against which both of these considerations are directed.
 
 
 13
 Unlike Burnett,[9] where the plaintiff's cause of action was precisely the same in two successive suits and the defendant could not have relied on the policy of repose, this is a case where Meyer has prosecuted two different actions. Upon the conclusion of the state court action, which included state and federal claims, appellees hardly could be said to have been put on notice that an action in the federal court grounded on a different constitutional theory would follow two years later. The inference is just the opposite and brings to appellees' side the policy of repose.[10]
 
 
 14
 Moreover, Meyer has slept on his rights "in a very real sense." Johnson v. Railway Express Agency, supra, 421 U.S. at 466. In Johnson, limitations ran on the plaintiff's § 1981 action in the midst of his efforts to obtain statutory relief from the Equal Employment Opportunity Commission. The Supreme Court faulted his conduct on the ground that a § 1981 action could have been brought at any time after his cause of action accrued.[11] Id. Lack of diligence weighs even more heavily against Meyer. Not only might he have resorted to the federal court in the first instance, but he also had eleven months after the New York Court of Appeals denied leave to appeal in July 1973 before the three year limitations period ran out. See UAW v. Hoosier Cardinal Corp., supra, 383 U.S. at 708.
 
 
 15
 We hold that the federalism considerations urged by Meyer are of insufficient substance to outweigh the statute of limitations policy so directly brought to bear by the facts of this case.[12]
 
 
 16
 Affirmed.
 
 OAKES, Circuit Judge (dissenting):
 
 17
 I dissent.
 
 
 18
 I would follow Mizell v. North Broward Hospital District, 427 F.2d 468 (5th Cir. 1970). There the Fifth Circuit held that pursuit of state administrative and judicial remedies by a dismissed local government employee tolled the statute of limitations applicable to the employee's later-filed action under 42 U.S.C. § 1983. Judge Tuttle for the court reasoned that "under our system of federalism aggrieved persons should be encouraged to utilize state procedures before appealing to the federal courts . . . ," id. at 474; failure to toll the § 1983 statute of limitations while state remedies are being pursued would cause unnecessary filings of § 1983 actions and would defeat an "underlying purpose of the Civil Rights Act," id.[1] Two crucial premises upon which the Fifth Circuit based its holding that state remedies are separate and independent from § 1983 remedies, and that federal courts, while in general applying state statutes of limitations to § 1983 actions, have the authority and the obligation to create their own tolling rules when necessary, id. at 473-74 have since been recognized as valid by our circuit. Lombard v. Board of Education, 502 F.2d 631, 635-37 (2d Cir. 1974) (federal claim under § 1983 separate from state claim), cert. denied, 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975); Kaiser v. Cahn, 510 F.2d 282, 286-87 (2d Cir. 1974). In the latter case, in reference to a § 1983 claim, we said:
 
 
 19
 We may in applying federal law to a claim based on a federal statute prevent a result that would substantially impair a valid federal interest. Thus a borrowed state statute of limitations may be tolled in conformity with federal doctrine where the right is the creature of federal statute, Holmberg v. Ambrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946) . . . .
 
 
 20
 We think that civil rights claimants, as well as seamen are entitled to, in the words of Mr. Justice Black "full benefit of federal law". Garrett v. Moore-McCormack Co., 317 U.S. 239, 243, 63 S.Ct. 246, 87 L.Ed. 239 (1942).
 
 
 21
 In sum, we do not feel that we are necessarily bound by the state's determination of when its statute of limitations is tolled where the question arises in a civil rights claim in the federal court.
 
 
 22
 510 F.2d at 287.
 
 
 23
 The majority distinguishes Mizell on the basis that appellant "did not restrict his (state court) petition to claims grounded in state law." Majority op., ante at 729. But appellant did not make the same federal claim in state court as he makes here; as the majority points out, "the core" of his federal claim in his state petition was "(a)lleged violations of his Sixth Amendment rights to counsel and confrontation of witnesses . . . ," id., while he here claims violation of "his Fifth Amendment privilege against self-incrimination" and deprival of "the pursuit of his calling without due process of law," id. at 728. The majority says that "(t)he only thing Meyer has held in reserve has been the federal court itself . . . ," id. at 729, ignoring the fact that he has also "held in reserve"[2] his Fifth Amendment and due process claims. The considerations set forth in Mizell, Lombard and Kaiser should apply to all federal claims not asserted in state court, regardless whether other federal claims were asserted in the state action.
 
 
 24
 The district court in this case refused to consider Mizell because it viewed as controlling the Supreme Court's decision in Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), a view correctly rejected by the majority, majority op., ante at p. 730 n.11. Johnson held that the filing of a Title VII charge with the EEOC did not toll the statute of limitations applicable to a § 1981 action. The Johnson case is readily distinguishable from this one in two respects. First, concerns of federalism were not implicated there, since both of plaintiff's avenues of relief were federal. Second, the procedures under Title VII and § 1981 were intended by Congress to complement each other, 421 U.S. at 459, 95 S.Ct. 1716, and essentially the same claims can be made in both types of actions. Here, by contrast, plaintiff's two avenues of relief derive from different sources of authority and involve entirely different claims, even though the same result (reinstatement) is being sought in both forums. Since constitutional issues raised in the state proceeding cannot be relitigated in the § 1983 action, Lombard v. Board of Education, supra, 502 F.2d at 636-37, the two forums are, with regard to federal constitutional relief, mutually exclusive, whereas in the Johnson situation the Supreme Court emphasized the nonexclusivity of the Title VII and Civil Rights Act procedures, 421 U.S. at 459, 95 S.Ct. 1716.
 
 
 25
 I would hold that the statute of limitations applicable to Detective Meyer's present claims under § 1983 was tolled while he was seeking relief in the state courts.
 
 
 
 [1]
 Pursuant to N.Y.Civ.Prac.Law § 7801 (McKinney 1963)
 
 
 [2]
 On January 15, 1974 Meyer requested the Department to reconsider his dismissal. The request was denied on April 9, 1974
 
 
 [3]
 Pursuant to 42 U.S.C. §§ 1983 and 1985 (1970) and their jurisdictional implementation, 28 U.S.C. § 1343(3) (1970)
 
 
 [4]
 N.Y.Civ.Prac.Law § 214(2) (McKinney Supp.1975) which includes actions "to recover upon a liability, penalty or forfeiture created or imposed by statute. . . ."
 
 
 [5]
 We apply § 214(2) to Meyer's § 1985 claim as well. See generally Nevels v. Wilson, 423 F.2d 691 (5 Cir. 1970) (per curiam); Wakat v. Harlib, 253 F.2d 59, 63-64 (7 Cir. 1958). Our conclusions below regarding the tolling of the limitations period for the § 1983 claim apply likewise to the § 1985 claim
 
 
 [6]
 The purpose of § 1983, as explicated by the Supreme Court in Monroe v. Pape, 365 U.S. 167, 173-74 (1961), is to provide a federal remedy for federal constitutional rights where the remedy afforded by state law is either inadequate or unavailable as a practical matter
 
 
 [7]
 The Fifth Circuit held:
 "(It) is clearly within the purpose of the Civil Rights Acts to encourage utilization of state administrative and court procedures to vindicate alleged wrongs under a state-created cause of action before requiring a plaintiff to bring his federal suit to prevent his being barred by a state statute of limitations." 427 F.2d at 474 (emphasis added).
 
 
 [8]
 We intimate no opinion as to how we would rule in a case indistinguishable from Mizell
 
 
 [9]
 The plaintiff in Burnett began a timely FELA action in a state court only to have it dismissed for improper venue. The FELA limitations period ran out in the course of the state action. The Supreme Court held that the statute should be tolled during the period of the pendency of the state action so as to allow the plaintiff an action in the federal court. 380 U.S. at 428
 
 
 [10]
 Under Johnson v. Railway Express Agency, Inc., supra, it may be that the factual question of whether the defendant was in a state of repose need be considered only when, as in Burnett, the two causes of action are the same. In other cases, an actual state of repose apparently may be presumed:
 "Only where there is complete identity of the causes of action will the protections (of the defendant's interests) suggested . . . necessarily exist and will the courts have an opportunity to assess the influence of the policy of repose inherent in a limitation period. . . ." 421 U.S. at 467, 468 n. 14.
 
 
 [11]
 The question in Johnson was whether the timely filing of a charge with the EEOC tolls the applicable state limitations period for an action under 42 U.S.C. § 1981 (1970). The Court held that it does not, relying on Congress' intent that administrative proceedings under Section 706 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 (1970), and suit in court order § 1981 be "separate, distinct, and independent". 421 U.S. at 460-61, 465-66. See also Electrical Workers Local 790 v. Robbins and Myers, Inc., 429 U.S. 229, 45 U.S.L.W. 4068 (U.S. Dec. 20, 1976). Johnson in no sense controls on the issue now before us, for the question of federalism policy presented in this case was not presented there. Nevertheless, we note the considerable weight Johnson places on upholding statute of limitations policy. 421 U.S. at 463-67, and 467 n. 14
 
 
 [12]
 In view of our holding above, we find it unnecessary to reach appellees' contention that Meyer's litigation of federal questions in his Article 78 proceeding bars the instant § 1983 action on the ground of res judicata
 
 
 [1]
 In the Fifth Circuit Mizell v. North Broward Hosp. Dist., 427 F.2d 468 (5th Cir. 1970), remains good law, see Guerra v. Manchester Terminal Corp., 498 F.2d 641, 649 n.13 (5th Cir. 1974), despite some earlier concern about its demise, see Blair v. Page Aircraft Maintenance, Inc., 467 F.2d 815, 821 (5th Cir. 1972) (Tuttle, J., dissenting) (suggesting possibility of "sub silentio" overruling of Mizell by majority). The case of Ammlung v. City of Chester, 494 F.2d 811, 816 (3d Cir. 1974), did criticize the "fashioning (of) federal tolling principles" in Mizell, but this aspect of Mizell has already been approved by the Second Circuit (without reference to Mizell ) in Kaiser v. Cahn, 510 F.2d 282, 286-87 (2d Cir. 1974). Ammlung, moreover, indicated that Mizell could be considered sound on its "peculiar facts," facts also extant in this case: Mizell involved "the utilization of state administrative procedures and the state courts to reinstate a privilege revoked by the state," and "the plaintiff's success in having his (job) reinstated at the state level would have obviated the need for a federal civil rights action." 494 F.2d at 816
 
 
 [2]
 The majority's characterization of certain federal claims as being "held in reserve" by litigants has a disapproving tone that I do not accept. Litigants have a clear, unquestioned right to proceed with separate claims in state and federal forums. Indeed, one inevitable consequence of the majority's decision today is that state court litigants will hold many more issues "in reserve" for federal court consideration