**Charles W. LEIGH and Leonard Allen, Plaintiffs,**

v.

**Robert McGUIRE, Individually and as Police Commissioner of the City of New York and Chairman of the Board of Trustees of the Police Pension Fund, Article II, Defendants.**

**No. 78 Civ. 2210 (RWS).**

United States District Court,
S. D. New York.

April 6, 1979.

---

Victor J. Herwitz, New York City, for plaintiffs.

Rosemary Carroll, Asst. to Deputy Com'r for Legal Matters, Police Dept. of the City of New York, New York City, for defendant.

## OPINION

SWEET, District Judge.

After nine years of litigation in the New York State courts, plaintiffs Charles W. Leigh and Leonard Allen ("the officers") commenced an action in this court, pursuant to 42 U.S.C. § 1983, seeking to vacate and annul their dismissal from the New York City Police Department in 1968. The officers assert that the use of illegally obtained wiretap evidence in their Police Department trial deprived them of rights secured by the United States Constitution and the Omnibus Crime Control Act. Defendant Robert B. Maguire, the Police Commissioner of New York City ("the Commissioner") now moves, and plaintiffs cross-move, for summary judgment pursuant to Fed.R. Civ.P. 56. For the reasons discussed below, the Commissioner's motion is granted, and the officers' cross motion denied.

The resolution of the pending motions has required a review of the complicated litigation involving the officers in the state courts. The officers were employed by the New York City Police Department from July 16, 1951 until July 2, 1968 when they were suspended without pay, pending trial of charges pursuant to the Administrative Code of the City of New York, § 434a–20.0. On July 2, 1968, in addition to being suspended from the Police Department, the officers were indicted by a grand jury in New York County, and charged, *inter alia*, with having conspired with other members and ex-members of the New York City Police Department to take unlawful fees in violation of former New York Penal Law §§ 580, 1826. On October 7, 1970, the Acting Police Commissioner concurred in the departmental findings of guilt and dismissed the officers. The officers then instituted a proceeding under Article 78 of the New York C.P.L.R. challenging the Police

Commissioner's determination as being, *inter alia*, arbitrary, and based on evidence obtained in violation of state and federal constitutional and statutory law.

From that point on, the civil and criminal proceedings continued in tandem through the New York courts. On October 19, 1971 one of the officers (Allen) filed in the New York Court of Appeals a notice of appeal from a September 30, 1971 order of the New York Supreme Court, Appellate Division which, *inter alia*, confirmed the Police Commissioner's determination of October 7, 1970. On February 15, 1974 this appeal was dismissed by the Court of Appeals on the ground that it had not been timely argued or submitted to that court.

In the meantime, the officers had been convicted by the Honorable Harold Birns, after a non-jury trial for conspiracy to take unlawful fees, on November 29, 1972. They received suspended six month prison terms and fines of $250, which were paid.

On February 25, 1974 the Appellate Division in *People v. Koutnik*, 44 A.D.2d 48, 353 N.Y.S.2d 197 (1974) held that certain wiretap evidence which had been used in the officers' criminal trial had been illegally obtained and that their convictions, and the convictions of certain other defendants on related charges, had to be vacated and remanded to the New York Supreme Court. In light of its decision in *Koutnik*, the Appellate Division on June 18, 1974 issued an order which, *inter alia*, annulled the Police Commissioner's October 7, 1970 determination. On December 5, 1974, however, upon motion by the Commissioner's predecessor, the Appellate Division granted a stay of its June 18, 1974 order pending determination of an appeal by the state regarding defendants other than the officers to the Court of Appeals in *People v. Koutnik*. On October 23, 1975 the Court of Appeals affirmed the Appellate Division's holding in *Koutnik* that the use of the wiretap evidence was unlawful. The officers then moved in the Appellate Division to vacate that court's December 5, 1974 stay, and the Police Commissioner moved to vacate that court's June 18, 1974 order. On December 16, 1975 the Ap-

pellate Division, without opinion, granted the Police Commissioner's motion and denied the officers' motion. That decision was presumably based upon New York C.P.L.R. 5015(a) which states: "The court which rendered a judgment or order may relieve a party from it upon such terms as may be just on motion of any interested person with such notice as the court may direct, upon the ground of: (5) reversal, modification or vacatur of a prior judgment or order upon which it is based."

The officers then filed in the New York Court of Appeals an appeal *as of right from* the Appellate Division's December 16, 1975 orders, and raised questions of state and federal constitutional law. On May 3, 1977 the New York Court of Appeals denied plaintiffs' appeal, without opinion. That court's disposition was listed in the New York Reporter under a heading entitled "Appeals on Constitutional Grounds." *See* 42 N.Y.2d 823, 396 N.Y.S.2d 1028, 364 N.E.2d 1353. Following dismissal of their appeal as of right, plaintiffs filed an application for leave to appeal, which was denied on October 6, 1977. *See* 42 N.Y.2d 809, 399 N.Y.S.2d 1025, 369 N.E.2d 774 (1977).

Here then is a litigation history which established the fundamental merit of the officers' claim, that is, the New York Courts ultimately determined that the use of wiretaps was improper. Notwithstanding that determination, the end result with respect to the officers was to deny them the relief sought (their reinstatement as police officers). The court has determined, however, that the Commissioner's motion for summary judgment must be granted because plaintiffs' 42 U.S.C. § 1983 action is barred by the statute of limitations. However, the Commissioner's motion for summary judgment on the ground of *res judicata* is denied for the reasons set forth below.

### Statute of Limitations

■ This action, brought under the federal Civil Rights Act, "is subject to the statute of limitations the state courts would apply in an analogous state action." *Meyer v. Frank*, 550 F.2d 726, 728 (2d Cir. 1977),

*cert. denied,* 434 U.S. 830, 98 S.Ct. 112, 54 L.Ed.2d 90 (1977). Accordingly, the three year New York statute of limitations [1] governs this Section 1983 claim. *Id.* The only open questions with respect to this issue are, when does the limitations period begin, and is the statute tolled.

■ The statutory clock began to run on the date of the officers' termination from the Police Department (October 7, 1970) because that is when the federal causes of action accrued. *See Meyer* at 728. The officers' assertion that the statute did not begin to run until December, 1975 or until October, 1977 [2] is without merit because: "The federal [Section 1983] remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." *Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961).

The officers urge that the court adopt *Mizell v. North Broward Hospital District,* 427 F.2d 468 (5th Cir. 1970). Under *Mizell,* a state statute of limitations applicable to a Section 1983 civil rights action is tolled while a potential federal civil rights plaintiff is pursuing state law causes of action in the state courts and state administrative agencies. Under *Mizell,* such tolling occurs as a matter of federal law, without reliance on a specific tolling statute. *See Williams v. Walsh,* 558 F.2d 667, 673 (2d Cir. 1977). The Second Circuit has in at least two recent cases considered, and failed to adopt the *Mizell* approach. *See Meyer; Williams, supra.* As in *Meyer,* the officers here did not restrict their Article 78 petition to claims grounded in state law. As was the case in *Meyer,* "[t]his is not a case like *Mizell* where the prior state court proceeding was directed at obtaining relief through an action grounded solely in state law." 550 F.2d at 729 (footnote omitted). As the *Meyer* court stated, "The only thing [plaintiff] has held in reserve has been the feder-

al court itself; federal law has played a principal role all along. The result is that the policy of avoiding federal interference with state affairs survives here in a diluted posture." *Id.*

*Res Judicata*

■ Title 28 of the United States Code, Section 1738, mandates that federal courts give full faith and credit to judgments entered by state courts of competent jurisdiction. *See Mitchell v. National Broadcasting Co.,* 553 F.2d 265, 274 (2d Cir. 1977), and cases cited therein.

In spite of the "seeming clarity" of Section 1738, however, a number of Second Circuit cases "have analyzed the issue of the extent to which the prior state court judgment precludes the subsequent federal Civil Rights Act lawsuit and make no reference whatever to § 1738 or to the concepts of *res judicata* and collateral estoppel which would be employed by the courts of the state in which the prior judgment was rendered." *Winters v. Lavine,* 574 F.2d 46 (2d Cir. 1978), *citing, inter alia, Lombard v. Board of Education,* 502 F.2d 631 (2d Cir. 1974), *cert. denied,* 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975). The *Winters* court noted that cases like *Lombard* appear to be applying a general federal law of *res judicata* which is explained by the existence of " 'special rules whereby *in certain circumstances* state court judgments are accorded perhaps . . . a lesser effect by a federal court in a Civil Rights Act case than they would be given by the state courts.' " 574 F.2d at 55, *quoting McCune v. Frank,* 521 F.2d 1152, 1156 n.10 (2d Cir. 1975) (emphasis in *Winters* ). The flexibility in this area is reflected in a recent law review article cited in *Winters* for the proposition that "the decisions of the lower courts teem with inconsistencies." 574 F.2d at 55, *quoting* Theis, Res Judicata in Civil

---

1. N.Y.Civ.Prac.Law § 214(2) (McKinney's Supp.1975) includes actions "to recover upon a liability, penalty or forfeiture created or imposed by statute . . . .".

2. At the very latest, plaintiffs' Section 1983 claims may be said to have accrued in 1974, when the Appellate Division stayed its reinforcement order.

Rights Act cases: An Introduction to the Problem, 70 *N.W.U.L.Rev.* 859, 865 & n.35 (1976). As noted by the Second Circuit, the problems in this area "apparently exist when 'well-defined federal policies, statutory or constitutional, . . . compete with those policies underlying Section 1738.-" 574 F.2d at 55, *quoting Mitchell v. National Broadcasting Co., supra*, 553 F.2d 265, 274 (2d Cir. 1977), *quoting American Mannex Corp. v. Rozands*, 462 F.2d 688, 690 (5th Cir.), *cert. denied*, 409 U.S. 1040, 93 S.Ct. 524, 34 L.Ed.2d 489 (1972). This, indeed, is such a case.

Here the officers did present successfully to the New York courts the constitutional arguments they now assert. There was, however, no final determination on the merits by a New York civil court subsequent to the holding of the Court of Appeals in *Koutnik* that use of the wiretap evidence was unlawful in the criminal proceeding. *See* 37 N.Y.2d 873, 378 N.Y.S.2d 360, 340 N.E.2d 727. In these circumstances, where the constitutional issue was raised in the state criminal proceeding but not finally litigated (because the Court of Appeals holding that the wiretap evidence was tainted was never considered with respect to the officers' prior convictions), *res judicata* does not bar their Section 1983 claim. Because of the court's determination concerning the statute of limitations, however, the court may not entertain the action.

Settle judgment on notice within ten days hereof.

IT IS SO ORDERED.