Charles W. LEIGH and Leonard
Allen, Appellants,

v.

Robert McGUIRE, Individually and as Police Commissioner of the City of New York and Chairman of the Board of Trustees of the Police Pension Fund, Article II, Appellee.

No. 290, Docket 79–7479.

United States Court of Appeals,
Second Circuit.

Argued Nov. 1, 1979.

Decided Dec. 19, 1979.

Victor J. Herwitz, New York City (Donald E. Nawi, New York City, on the brief), for appellants.

L. Kevin Sheridan, New York City (Allen G. Schwartz, Corp. Counsel, City of New York, and Alexander J. Wulwick, New York City, on the brief), for appellee.

Before MOORE, TIMBERS and VAN GRAAFEILAND, Circuit Judges.

TIMBERS, Circuit Judge:

Appellants, two former police officers who were discharged from the New York City Police Department in 1970, commenced the instant action in the Southern District of New York on May 12, 1978 pursuant to 42 U.S.C. § 1983 (1976), seeking to vacate and annul their dismissal from the force. The basis of their action was that the use of illegally obtained wiretap evidence against them in Police Department proceedings violated their rights under the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2511 *et seq.* (1976), and under the Fourth and Fourteenth Amendments. The district court in an opinion filed April 6, 1979, 468 F.Supp. 1163, granted summary judgment for appellee Police Commissioner, ruling that the action was barred by the applicable New York three-year statute of limitations. From the judgment entered on Judge Sweet's opinion, this appeal has been taken.

The issue on appeal is whether the statute of limitations should be tolled during the period in which appellants litigated the same substantive claim in the New York state courts. Under the circumstances of this case, we hold that the statute should be tolled. We therefore reverse and remand.[1]

## I.

In view of the narrow legal issue on which this appeal turns, we cut through the procedural morass of state court proceedings during the past decade and briefly

---

1. Although the district court dismissed the complaint as time-barred, it also held that the action would not have been barred by res judicata. We agree with the district court's conclusion in that respect, and therefore affirm on that issue.

Although appellants' discharges ultimately were upheld by the New York courts in an Article 78 proceeding, that decision was the result of an apparent procedural ruling. In no sense could appellees be regarded as having lost on the merits of the issues which formed the basis of their instant § 1983 action. On the contrary, the state court decision in *People v.*

*Koutnik,* 44 A.D.2d 48, 353 N.Y.S.2d 197 (1st Dept. 1974), *aff'd,* 37 N.Y.2d 873, 340 N.E.2d 727, 378 N.Y.S.2d 360 (1975), vindicated appellants' claims of wiretap illegality.

Therefore, in view of the fact that appellants presented their federal claims successfully to the New York courts, and were not denied relief because they lost on the merits of those issues, we believe that the district court was correct in ruling that res judicata would not bar the § 1983 action. *Winters v. Lavine,* 574 F.2d 46 (2 Cir. 1978); *Lombard v. Board of Education,* 502 F.2d 631 (2 Cir. 1974), *cert. denied,* 420 U.S. 976 (1975).

summarize here only those facts and prior proceedings believed necessary to an understanding of our ruling on the legal issue presented.[2]

Appellants Charles Leigh and Leonard Allen joined the New York City Police Department in 1951. In 1968 they were indicted for an alleged conspiracy to accept bribes from gamblers. They were suspended from the force without pay. In October 1970 the Acting Police Commissioner made a final determination dismissing appellants from the force. Appellants then commenced an Article 78 proceeding, N.Y.Civ. Prac.Law § 7801 (McKinney 1963), alleging, inter alia, that their dismissals were based on evidence obtained by means of illegal wiretaps. From this point on, appellants' Article 78 and criminal proceedings progressed "in tandem" through the New York courts. Although technically separate, the issues presented in each were substantially the same. The New York courts recognized that the criminal and Article 78 proceedings were closely tied.[3]

Appellants' dismissal from the force was upheld by the Appellate Division, First Department, in 1971. The following year they were convicted on the criminal charges. In February 1974, however, the Appellate Division ruled that certain wiretap evidence which had been used in appellants' criminal trial had been obtained illegally. Their convictions, therefore (along with the convictions of several other defendants), were vacated. *People v. Koutnik,* note 1, *supra.* Because of the wiretap ruling in *Koutnik,* the Appellate Division entered an order on June 18, 1974 which annulled appellants' dismissal from the police force. This order of annulment was stayed, however, pending the state's appeal from the Appellate Division's ruling in *Koutnik.*

**2.** We assume familiarity with Judge Sweet's succinct, well reasoned opinion of April 6, 1979.

**3.** In its Memorandum Opinion of June 18, 1974, the Appellate Division stated that "[t]hroughout these entire proceedings this Court has considered the criminal and Article 78 proceedings together in an attempt to achieve a uniform and just result." *Allen v. Murphy,* 45 A.D.2d 693, 356 N.Y.S.2d 865, 867 (1st Dept. 1974).

In October 1975 the New York Court of Appeals affirmed the Appellate Division's ruling in *Koutnik* that the wiretap evidence had been illegally obtained. Since the Court of Appeals decision ostensibly settled once and for all that the wiretap evidence against appellants—the basis for the bribery charges in both the departmental and the criminal proceedings—had been obtained illegally and hence was inadmissible, appellants sought appropriate final relief in their Article 78 proceeding. They therefore moved in the Appellate Division to vacate the stay of the June 18, 1974 order which had annulled their dismissals from the police force. In December 1975, however, the Appellate Division, without opinion, denied appellants' motion and instead granted the motion of the Police Commissioner to vacate the June 18, 1974 order of annulment.[4]

The final result of the extensive proceedings in the state courts was that appellants succeeded in establishing their claims of constitutional violations, and yet were denied relief. In an effort to correct this incongruous result, appellants commenced the instant § 1983 action to obtain the relief which had been denied them at the state level.

## II.

 It is well established that in an action brought under § 1983 federal courts should apply the statute of limitations applicable to the most similar state cause of action. *Williams v. Walsh,* 558 F.2d 667, 670 (2 Cir. 1977); *Kaiser v. Cahn,* 510 F.2d 282, 284 (2 Cir. 1974). In this case, the New York three-year statute of limitations must govern the claim.[5] Appellants' cause of

**4.** The reasoning behind the Appellate Division's refusal to grant appellants' request for ultimate relief is unclear. Presumably it reflected the court's view that, for procedural reasons, the Appellate Division should not upset its original ruling in the case.

**5.** N.Y.Civ.Prac.Law § 214(2) (McKinney Supp. 1975). This section includes actions "to recover upon a liability, penalty or forfeiture created or imposed by statute . . . . ."

action first accrued when they were dismissed from the force in 1970. Their § 1983 action was not commenced until May 1978. Appellants argue, however, that the § 1983 complaint was timely filed because the statute of limitations was tolled until at least December 1975, while they litigated their claims in the state courts.

■ There is no doubt that a federal court has the power to toll borrowed statutes of limitations in § 1983 actions. *Meyer v. Frank,* 550 F.2d 726, 729 (2 Cir.), *cert. denied,* 434 U.S. 830 (1977); *Kaiser v. Cahn, supra,* 510 F.2d at 286–87. The question before us today is whether the circumstances of this case warrant such tolling. In answering this question, we must attempt to balance policies of federalism which are served by tolling the statute of limitations against policies of repose served by strict application of the statute of limitations.

■ Ordinarily, the remedial policy underlying § 1983 would not be impinged by strict application of the three-year state limitations period, since § 1983 plaintiffs are not required to exhaust state remedies before seeking federal relief. Nevertheless, considerations of comity and federalism under some circumstances do require that the statute of limitations be tolled during the pendency of state court or agency proceedings. Federal courts should avoid as much as possible "intruding upon the domain which is particularly the responsibility of the state courts". *Williams v. Walsh, supra,* 558 F.2d at 674. Thus, where a potential § 1983 plaintiff initially enters the state courts or administrative agencies to prosecute *state-created* claims, federal courts have tolled the § 1983 statute of limitations during the pendency of the state or administrative proceedings. In this way, federal courts have protected the plaintiff's right to seek his federal remedies under § 1983 without interfering with the state's resolution of its own causes of action. *Tomanio v. Board of Regents,* 603 F.2d 255 (2 Cir. 1979); *Mizell v. North Broward Hospital District,* 427 F.2d 468 (5 Cir. 1970); *see Williams v. Walsh, supra,* 558 F.2d at 674.

In the instant case, the district court, relying upon *Meyer v. Frank, supra,* and *Williams v. Walsh, supra,* held that tolling would not further the interests of federalism because appellants raised both state and federal issues in the state courts. Thus, concluded the court, "the policy of avoiding federal interference with state affairs survives here in a diluted posture." (quoting *Meyer v. Frank, supra,* 550 F.2d at 729).

The mere fact that federal claims were raised in the state proceedings, however, does not necessitate the conclusion that policies of federalism do not support tolling. Here, appellants were being *criminally* prosecuted and, as stated above, the Article 78 proceeding was very much intertwined with the criminal proceedings. When the Appellate Division found the wiretaps illegal in the criminal case of *People v. Koutnik, supra,* for example, it also vacated the dismissal orders in the Article 78 proceeding, noting that the civil and criminal actions required a "uniform . . . result." Note 3, *supra.*

The fact that appellants' federal claims were raised in criminal proceedings and in the Article 78 proceeding closely tied to the criminal proceedings distinguishes this case from *Meyer* and *Williams.* Unlike in *Meyer* and *Williams,* appellants here did not "choose" the state forum to litigate their federal claims while holding the federal forum "in reserve." *Meyer v. Frank, supra,* 550 F.2d at 729. Appellants were forced to raise their constitutional claims as a defense in their state trial. Moreover, the interrelationship of the criminal and civil actions at the state level provides strong support for the conclusion that the statute of limitations should be tolled here. Federal courts must be particularly wary of interfering with the functions of state courts when state criminal proceedings are involved. *See generally Younger v. Harris,* 401 U.S. 37 (1971); *Steffel v. Thompson,* 415 U.S. 452 (1974); *Huffman v. Pursue, Ltd.,* 420 U.S. 592 (1975). Interests of federalism, therefore, favored the deferral of the federal action here until the issues all were finally resolved in the state criminal proceedings, including two levels of appeals.

By tolling the statute of limitations during the pendency of appellants' Article 78 proceeding and the criminal appeals involving the issue of wiretap illegality, we are able to comply with the *Younger* rule that federal courts should "vindicate and protect federal rights and federal interests . . . in ways that will not unduly interfere with the legitimate activities of the States." *Huffman v. Pursue, Ltd., supra,* 420 U.S. at 601 (quoting *Younger v. Harris, supra,* 401 U.S. at 44). Tolling here permits the federal courts to show the "proper respect for state functions", *Younger v. Harris, supra,* 401 U.S. at 44, by permitting final resolution of issues in state criminal appeals, while at the same time enabling us to preserve the right of appellants to vindicate their federal claims under § 1983.

We therefore hold that the district court erred in its belief that concepts of federalism do not support tolling under the circumstances of this case.

### III.

Having concluded that the remedial policy of § 1983 and considerations of federalism support tolling in this case, we turn now to a consideration of the policies served by strict application of the three-year statute of limitations.

Strict enforcement of statutes of limitations protects defendants who have been "lulled" into a state of repose by plaintiffs who have "slept on their rights". *Meyer v. Frank, supra,* 550 F.2d at 730. In the instant case, however, appellants were diligent in the pursuit of their claims, having raised the federal issues in the state courts almost immediately after their discharge from the police force. By no means can they be regarded as having "slept" on their rights. Likewise, appellants did not "lull" appellee into believing that the federal issues underlying the § 1983 claims would never be raised. The precise issues involving wiretap illegality that form the basis of

the § 1983 action were hotly contested throughout the state proceedings.[6] Thus, the policies traditionally served by strict enforcement of statutes of limitations will not be frustrated by tolling in this case.

To summarize: we hold, under the special circumstances of this case, that federalism considerations support the tolling of the statute of limitations governing the § 1983 action during the pendency of the interrelated state criminal and Article 78 proceedings; and that the policies of repose underlying the statute of limitations will not be adversely affected by such tolling. We therefore reverse the holding of the district court that appellants' § 1983 action is time-barred.

Reversed and remanded.

---

6. It may be noted further that the state court records have preserved most of the relevant evidence in this case. The federal court therefore is not faced with the prospect of adjudicating "stale" claims.